# COMPOSITE EXHIBIT A

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-007395-CA-01
SECTION: CA22
JUDGE: Beatrice Butchko

**JANE DOE**

Plaintiff(s)

vs.

**BOLLORE LOGISTICS USA, INC. et al**

Defendant(s)

_____/

<u>**AGREED ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**</u>

       THIS CAUSE came before the Court upon Plaintiff's Motion to Amend the Complaint (the "Motion"). The Court having considered the Motion and the record, and being otherwise fully advised herein, it is hereby:

       **ORDERED AND ADJUDGED** that:

1. The Motion is **GRANTED**. The Amended Complaint shall be considered filed as of February 27, 2023.

2. Defendant Bollore Logistics USA Inc. shall have up to and including March 29, 2023, to respond to the Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>27th day of February, 2023</u>.

<u>2022-007395-CA-01 02-27-2023 4:11 PM</u>
Hon. Beatrice Butchko

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Brandon Ulysees Campbell, brandon.campbell@jacksonlewis.com
Brandon Ulysees Campbell, illeana.collazo@jacksonlewis.com
Brandon Ulysees Campbell, miamidocketing@jacksonlewis.com
H. Clay Roberts, roberts@robertspa.com
H. Clay Roberts, gloria@robertspa.com
H. Clay Roberts, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, basnuevo@robertspa.com
Javier Alejandro Basnuevo Valdivia, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, keren@robertspa.com
Pedro Jaime Torres-Diaz, pedro.torres-diaz@jacksonlewis.com
Pedro Jaime Torres-Diaz, illeana.collazo@jacksonlewis.com
Pedro Jaime Torres-Diaz, miamidocketing@jacksonlewis.com

**Physically Served:**

IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-007395-CA-01

JANE DOE,

     Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a foreign corporation for profit; ADONIS FERNANDEZ, an individual

     Defendants.

_____/

## **PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

The Plaintiff, JANE DOE, requests this court enter a protective order specifying that depositions in this matter must be made with a competent interpreter and that the translation of DOE's testimony be verbatim, and states:

1.    At this stage, the parties are engaged in limited discovery regarding the Defendant's Motion to Compel Arbitration. A central issue on this motion is the procedural unconscionability surrounding the signing of a document titled "Employee's Agreement Not to Disclose Corporate Confidential Information" (the "Agreement"). Although the Agreement is inconsistent in its language, vague, and inapplicable by its own terms,[1] Defendant insists that an arbitration clause tucked away in this Agreement is binding on the Plaintiff today. Plaintiff will

_____

[1] Section 5 is titled "Agreement Binding After Employment Ends" and provides that the "terms and conditions shall be binding upon employee for 12 months following the termination of employee's employment, regardless of the reason for such termination." Plaintiff's employment ended in April of 2021, and the Defendant did not move to compel arbitration until July of 2022.

address the various reasons why this Agreement does not apply in her written response to Defendant's motion.

2. At the Defendant's request, the parties coordinated Plaintiff's deposition to occur on October 18, 2022 at 2 PM. Also at the Defendant's request, the deposition was set to occur in-person at the office of Defendant's counsel.

3. While coordinating Plaintiff's deposition, Defendant's counsel was informed that Plaintiff required a Spanish interpreter to give testimony in this case.

4. Almost immediately after beginning the deposition, the interpreter provided by Defense counsel failed to accurately translate the Plaintiff's testimony from Spanish to English.

5. In the initial phases of the deposition, both Plaintiff's counsel and Defense counsel objected to different aspects of the interpreter's translation.

6. As the questions turned to Plaintiff's substantive testimony about the procedural problems with the Agreement, the interpreter failed to translate the Plaintiff's Spanish answers verbatim.  This failure resulted in an inaccurate transcript.

7. Plaintiff's counsel objected to the translation, but Defense counsel insisted on moving forward with the deposition and continue using this inadequate translator. Plaintiff's counsel then moved for a protective order on the record at the deposition.

8. Good cause exists for this Court to enter a protective order because this Court will be relying upon the Plaintiff's deposition testimony when ruling on Defendant's Motion to Compel Arbitration.  As the Court has already acknowledged when ordering an evidentiary hearing, such a ruling will depend on facts presented by the parties.

9. It is fundamental to this Court's fact-specific inquiry that any transcript depositions in this case be accurate, and contain the full extent of each witnesses testimony.

10.     To avoid issues with the interpreter in the future, Plaintiff suggests the Defendant provide the names of three Spanish interpreters ahead of any continued deposition of the Plaintiff, so that the parties can vet, confer, and agree on a competent interpreter.

11.     Furthermore, Defendant has resisted providing document discovery in the matter because the matter is stayed pending the Court's ruling on the Motion to Compel Arbitration, however, during the deposition, Defense counsel began introducing documents from Defendant's internal files and questioning Plaintiff about those documents.

12.     Litigation should not be conducted by surprise. Plaintiff requests that any documents Defendant intends to mark as exhibits to Plaintiff's deposition be produced at least three days in advance of the deposition.

WHEREFORE, the Plaintiff, JANE DOE, respectfully requests this Honorable Court enter an Order requiring the Defendants provide a list of three interpreters so that Plaintiff can vet them, requiring the parties to confer and mutually agree on an interpreter from the provided list, requiring any additional costs be borne by the Defendant, requiring the Defendant to provide all documents the Defendant will introduce at the deposition to Plaintiff's counsel three days beforehand, and any other relief this Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed via the Florida Courts E-Filing Portal/ECF and was sent by E-mail from the Florida Courts' E-Filing Portal system on this 19th day of October, 2022 to: Pedro J. Torres-Diaz, Esq., pedro.torres-diaz@jacksonlewis.com; Brandon U. Campbell, Esq., brandon.campbell@jacksonlewis ; JACKSON LEWIS P.C., One Biscayne Tower, Suite 3500, 2 South Biscayne Boulevard, Miami, Florida 33131.

ROBERTS, P.A.
*Co-Counsel for Plaintiff*
113 Almeria Avenue
Coral Gables, FL 33134
Fax: (305)442-2559
Email: banuevo@robertspa.com

By:  */s/:  Javier A Basnuevo*
JAVIER A BASNUEVO
Fla. Bar No.:  100509

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

JANE DOE,                                          CASE NO. 2022-007395-CA-01

            Plaintiff,

v.

BOLLORE LOGISTICS USA, INC., a
Foreign corporation for profit; ADONIS
FERNANDEZ, an individual,

            Defendants.

_____/

### DEFENDANT BOLLORE LOGISTICS USA, INC.'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant, Bollore Logistics USA, Inc. ("Defendant" or "Bollore"), files the following

second notice of supplemental authority in Support of Defendant's Motion to Compel Arbitration

and Stay Proceedings:

    **A.**    ***Auchter Co. v. Zagloul*, 949 So. 2d 1189, 94 (Fla. 1st DCA 2007)**

        *See* Exhibit A.

    **B.**    ***See Rockwood Automatic Mach., Inc. v. Lear Corp.,* 13 Misc. 3d 1219(A), \*11-12 (N.Y. Sup. Ct. 2006)**

        *See* Exhibit B.

    **C.**    ***Bachus & Stratton v. Mann,* 639 So. 2d 35 (Fla. 4th DCA 1994)***.**

        *See* Exhibit B.

**I.**    <u>**Exhibits A and B**</u>

It is well-settled Florida Law that dispute resolution provisions survive the termination

or expiration of a contract. *Auchter Co. v. Zagloul*, 949 So. 2d 1189, 1195 (Fla. 1st DCA 2007)

("We hold that the dispute resolution provisions of the contract are intended to survive purported termination of the contract by a party. Because the trial court reached the opposite conclusion, we reverse the order denying appellant's Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action.") (**Exhibit A**); *id* (citing *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 208 (1991)).

The same proposition applies under New York Law. *See Rockwood Automatic Mach., Inc. v. Lear Corp.,* 13 Misc. 3d 1219(A), *11-12 (N.Y. Sup. Ct. 2006) (**Exhibit B**) ("the prevailing general rule of both New York and Federal common law of contracts is that, absent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes arising thereunder, whether its cessation was the result of the expiration of its term, exercise of a unilateral termination option, or breach"); *id* (citing cases for the same proposition).

## II.     <u>Exhibit C</u>

Under Florida law, sexual harassment and assault claims are subject to arbitration. *See Bachus & Stratton v. Mann,* 639 So. 2d 35, 37 (Fla. 4th DCA 1994) ("Mann further asserts she could not be compelled to arbitrate her Title VII sex discrimination claim. We disagree …. Moreover, we reject Mann's position that her tort claims against Richard Love and another executive of Bachus & Stratton Securities, Inc. were not subject to arbitration.").

Both, the instant arbitration provision and the provision in *Bachus* are broadly constructed. In *Bachus*, the plaintiff agreed: "to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register…."

2

*Id*. at 36. In the instant case, Plaintiff agreed "to arbitrate "any controversy or claim arising out of Employee's employment with BOLLORE LOGISITCS or the termination thereof." *Def's Motion*., p. 10.

In *Bachus*, the court held that the factual allegations alleged within the plaintiff's sexual harassment and assault complaint "demonstrate [the plaintiff's] claims arose in connection with the business operations of her former employer." 639 So. 2d at 32. Defendant asserts the instant arbitration provision similarly encompasses Plaintiff's claims. *See Def's Motion*., pp. 10 – 11.

[THIS SPACE INTENTIONALLY LEFT BLANK]

3

Case No. 2022-007395-CA-01

Dated:  September 6, 2022.

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

By: _s/Brandon U. Campbell_____
Pedro J. Torres-Díaz, Esq. (19327)
Email: *Pedro.torres@jacksonlewis.com*
Brandon U. Campbell, Esq. (112853)
 Email:*brandon.campbell@jacksonlewis.com*

*Counsel for Defendant, Bollore Logistics*
*USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September 2022, a true and correct copy of

the foregoing document was electronically filed with the Clerk of the Court by using Florida

Courts E-Filing Portal and furnished via electronic mail on all counsel of record identified on

the attached Service List.

_s/ Brandon U. Campbell_____
Brandon U. Campbell, Esq.

4

Case No. 2022-007395-CA-01

## <u>SERVICE LIST</u>

*Jane Doe v. Bollore Logistics USA, Inc. and Adonis Fernandez*
*Case No. 2022-007395-CA-01*

| | |
|---|---|
| H. Clay Roberts, Esq. | Pedro J. Torres-Díaz, Esq. |
| Florida Bar No. 262307 | Email: *pedro.torres@jacksonlewis.com* |
| Javier A. Basnuevo, Esq. | Florida Bar No. 19327 |
| Florida Bar No. 100509 | Brandon U. Campbell, Esq. |
| ROBERTS, P.A. | Florida Bar No. 112853 |
| 113 Almeria Avenue | Email: *brandon.campbell@jacksonlewis.com* |
| Coral Gables, Florida 33134 | JACKSON LEWIS P.C. |
| Telephone:  (305) 442-17007 | One Biscayne Tower, Suite 3500 |
| Facsimile:  (305) 442-2559 | 2 South Biscayne Boulevard |
| Email:  *roberts@robertspa.com* | Miami, Florida 33131 |
| *basnuevo@robertspa.com* | Telephone: (305) 577-7600 |
| | Facsimile: (305) 373-4466 |
| *Counsel for Plaintiff* | *Counsel for Defendant, Bollore Logistics USA, Inc.* |

4889-0299-0385, v. 1

5

# EXHIBIT "A"



Positive
As of: September 6, 2022 4:51 PM Z

# *Auchter Co. v. Zagloul*

Court of Appeal of Florida, First District

March 7, 2007, Opinion Filed

CASE NO. 1D06-2817

**Reporter**

949 So. 2d 1189 *; 2007 Fla. App. LEXIS 3292 **; 32 Fla. L. Weekly D 635

THE AUCHTER COMPANY, a Florida corporation, Appellant, v. FOUAD ZAGLOUL, Appellee.

**Subsequent History: [**1]** Released for Publication March 23, 2007.

Review denied by *Zagloul v. Auchter Co., 2007 Fla. LEXIS 1889 (Fla., Oct. 1, 2007)*

**Prior History:** An appeal from the circuit court for Duval County. John H. Skinner, Judge.

**Disposition:** REVERSED and REMANDED, with directions.

## Core Terms

arbitration, mediation, parties, termination, provisions, arbitration provision, dispute resolution, subparagraph, trial court, Contractor, disputes, survive, purported, waived, terminate a contract, binding

## Case Summary

**Procedural Posture**
Appellee owner sued appellant contractor in the Circuit Court for Duval County (Florida) for causes of action based on a contract between the parties regarding the construction of a house. The trial court issued a nonfinal order denying the contractor's motion to dismiss and/or compel mediation and/or arbitration and to stay the action. The contractor appealed the nonfinal order.

**Overview**
The parties entered into a standard American Institute of Architects contract for the construction of a house on the owner's property. When the owner terminated the contract and filed the complaint, the contractor argued that, pursuant to the mediation and arbitration provisions contained in the general conditions of the contract, the owner was required to submit any claims arising out of or related to the contract to mediation and, if mediation failed, to binding arbitration. The owner countered that the contract between the parties was terminated by the owner and, as a matter of law, the mediation and arbitration provisions contained in the general conditions of the contract did not survive that termination. On appeal, the court found that the trial court erred by denying the contractor's motion because the dispute resolution provisions of the contract were intended to survive the purported termination of the contract by a party. Therefore, pursuant to the language of the contract, all claims arising out of or related to the contract were to be submitted to mediation and, if mediation failed, to binding arbitration.

**Outcome**
The judgment was reversed, and the cause was remanded with directions that the trial court grant the contractor's motion; compel the parties to submit to mediation and, if mediation failed, to binding arbitration; and stay the action pending the parties' compliance.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

*HN1*[⤓] **Appellate Jurisdiction, Interlocutory Orders**

*Fla. Const. art. V, § 4(b)(1)* grants to district courts of appeal jurisdiction to review interlocutory orders to the extent provided by rules adopted by the Supreme Court of Florida.

Business & Corporate Compliance > ... > Alternative

949 So. 2d 1189, *1189; 2007 Fla. App. LEXIS 3292, **1

Dispute Resolution > Arbitration > Arbitrability

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Judicial Review

### HN2[🔻] Arbitration, Arbitrability

*Fla. R. App. P. 9.130(a)(3)(C)(iv)* provides for appeal to the district courts of appeal of nonfinal orders that determine the entitlement of a party to arbitration.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Stay Pending Arbitration

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Mediation

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### HN3[🔻] Arbitration, Arbitrability

*Fla. R. App. P. 9.130(a)(3)(C)(iv)* authorizes review of an order denying a motion to stay and compel mediation and, if mediation failed, arbitration, pursuant to a contract between the parties.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Civil Procedure > Appeals > Standards of Review > De Novo Review

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Mediation

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### HN4[🔻] Arbitration, Arbitrability

Where a trial court's order denying a motion to compel mediation and/or arbitration is based entirely on its construction of contract documents, the standard of review is de novo.

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Scope

Constitutional Law > ... > Commerce Clause > Interstate Commerce > General Overview

### HN5[🔻] Arbitration, Federal Arbitration Act

Congress intended to exercise its full Commerce Clause power when it passed the Federal Arbitration Act, *9 U.S.C.S. §§ 1 - 16 (2000)*.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

### HN6[🔻] Arbitration, Arbitrability

Under both federal statutory provisions and Florida's Arbitration Code *§§ 682.01 - 682.22, Fla. Stat.* (2005), there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived.

949 So. 2d 1189, *1189; 2007 Fla. App. LEXIS 3292, **1

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN7*[⬇] **Arbitration, Arbitrability**

An arbitration provision does not require any type of savings clause to survive contract termination. On the contrary, it is well established that the duty to arbitrate does not necessarily end when a contract is terminated, as long as the dispute concerns matters arising under the contract. Arbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration. Where post-termination disputes are not expressly excluded from the scope of the dispute resolution provisions of the contract, a court must construe them as intended to be included.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Contracts Law > Contract Interpretation > General Overview

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN8*[⬇] **Arbitration, Arbitrability**

The language "arising out of or relating to the contract" has been interpreted by the Supreme Court of Florida as intended to encompass virtually all disputes between the contracting parties, including related tort claims.

Business & Corporate Compliance > ... > Alternative Dispute Resolution > Arbitration > Arbitrability

Contracts Law > Contract Interpretation > General Overview

Business & Corporate Compliance > ... > Arbitration > Federal Arbitration Act > Arbitration Agreements

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

*HN9*[⬇] **Arbitration, Arbitrability**

Arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court. Because arbitration agreements are a favored means of dispute resolution, any doubts concerning their scope should generally be resolved in favor of arbitration.

**Counsel:** John W. Caven, Jr., and Allan P. Clark of Foley & Lardner LLP, Jacksonville and John R. Hamilton, Foley & Lardner LLP, Orlando, for Appellant.

T. Geoffrey Heekin, S. Hunter Malin, and Jeremy T. Simons of Heekin, Malin & Wenzel, P.A., Jacksonville, for Appellee.

Christopher V. Carlyle, Shannon McLin Carlyle, and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, for Amicus Curiae Associated General Contractors of America and Associated General Contractors of Greater Florida.

**Judges:** WEBSTER, J. BROWNING, C.J., and PADOVANO, J., CONCUR.

**Opinion by:** WEBSTER

# Opinion

[*1190]

WEBSTER, J.

Appellant seeks review of a non-final order denying its Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action filed in response to a complaint stating causes of action based on a contract between appellant (as the contractor) and appellee (as the owner) to build a house. We have jurisdiction. *HN1*[⬆] *Art. V, § 4(b)(1), Fla. Const.* (granting to district courts [**2] of appeal jurisdiction to "review interlocutory orders . . . to the extent provided by rules

949 So. 2d 1189, *1190; 2007 Fla. App. LEXIS 3292, **2

adopted by the supreme court"); *HN2*[⬆] *Fla. R. App. P. 9.130(a)(3)(C)(iv)* (providing for appeal to the district courts of appeal of non-final orders that "determine . . . the entitlement of a party to arbitration"). *See Tropical Ford, Inc. v. Major, 882 So. 2d 476 (Fla. 5th DCA 2004)* (concluding that *HN3*[⬆] *rule 9.130(a)(3)(C)(iv)* authorizes review of an order denying a motion to stay and compel mediation and, if mediation failed, arbitration, pursuant to a contract between the parties). Because we conclude that the trial court erred as a matter of law when it determined that the mandatory mediation and arbitration provisions of the parties' contract did not survive appellee's purported termination of the contract, we reverse and remand with directions that the trial court grant appellant's motion; compel the parties to submit to mediation and, if mediation fails, to binding arbitration; and stay the action pending the parties' compliance.

The pertinent facts are not in dispute. In 2003, the parties entered into a standard American Institute of Architects **[**3]** (AIA) contract for the construction of a **[*1191]** house on appellee's property. It consisted of two documents--a "Standard Form of Agreement Between Owner and Contractor" (AIA Document A111-1997) and "General Conditions of the Contract for Construction" (AIA Document A201-1997). In 2005, roughly two months after appellant had secured a certificate of occupancy, appellee notified appellant that he was terminating the contract because of what he characterized as "substantial breaches of the [c]ontract." Appellee then filed a four-count complaint seeking damages. Appellant responded with its Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action, arguing that, pursuant to subparagraphs 4.5.1 and 4.6.1 of the General Conditions of the contract, appellee was required to submit any "claims arising out of or related to the [c]ontract" to mediation and, if mediation failed, to binding arbitration. Appellee opposed appellant's motion on the ground that the contract between the parties had been terminated and, as a matter of law, the mediation and arbitration provisions contained in the General Conditions did not survive that termination. Appellee relied principally on the decision **[**4]** in *Aberdeen Golf & Country Club v. Bliss Construction, Inc., 932 So. 2d 235 (Fla. 4th DCA 2005)*, which decision appellee contended was binding on the trial court because it was the only Florida appellate decision construing the mediation and arbitration provisions contained in the standard AIA contract. Appellant responded that *Aberdeen* was not controlling because the discussion of the effect of termination of the contract on the mediation and

arbitration provisions was dicta, and the actual holding of the case was that the owner had waived the right to insist on mediation or arbitration when it terminated the contract. Appellant argued that, because it had done nothing to waive its right to insist upon compliance with the mediation and arbitration provisions, *Aberdeen* had no bearing on the issue. Ultimately, the trial court accepted appellee's position and, relying on *Aberdeen* for the proposition that the mediation and arbitration provisions of the standard AIA contract were not intended to survive termination of the contract, denied appellant's motion. This appeal follows. *HN4*[⬆] Because the trial court's order denying the motion to compel mediation and/or arbitration **[**5]** is based entirely on its construction of the contract documents, our standard of review is de novo. E.g., *Powertel, Inc. v. Bexley, 743 So. 2d 570, 573 (Fla. 1st DCA 1999)*.

It would appear that, given the nature of the parties' contract, the applicable law is that found in the Federal Arbitration Act (*9 U.S.C. §§ 1-16 (2000)*), rather than in the Florida Arbitration Code ( *§§ 682.01-682.22, Fla. Stat.* (2005)). *See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)* (concluding that *HN5*[⬆] Congress intended to exercise its full Commerce Clause power when it passed the Federal Arbitration Act). However, for purposes of this appeal, it is irrelevant which law applies because the analysis is the same in either case. According to our supreme court,

*HN6*[⬆] [u]nder both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and **[**6]** whether the right to arbitration has been waived.

*Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)* (citing *Terminix Int'l Co. v. Ponzio, 693 So. 2d 104, 106 (Fla. 5th DCA 1997)*). *Accord John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094 (11th Cir. 2003)*. Here, the trial court **[*1192]** based its decision on its conclusion that the mediation and arbitration provisions of the contract did not survive termination of the contract--i.e., that no *valid* agreement to arbitrate existed after termination of the contract. Nobody has suggested that no arbitrable issue exists or that appellant waived its right to arbitrate. Accordingly, we are concerned only with whether the mediation and arbitration provisions contained in the contract were "valid" when appellant sought to invoke them.

949 So. 2d 1189, *1192; 2007 Fla. App. LEXIS 3292, **6

The relevant portions of the parties' contract are contained in the General Conditions of the contract. Subparagraph 4.3.1 defines "Claim" as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the **[\*\*7]** terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." Paragraph 4.4 is titled "RESOLUTION OF CLAIMS AND DISPUTES." Its pertinent provisions read:

**4.4.1 Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.
. . . .

**4.4.5** . . . . The Approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

Paragraph 4.5 is titled "MEDIATION." Its pertinent provisions read: **[\*\*8]**

**4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may

be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

Paragraph **[\*\*9]** 4.6 is titled "ARBITRATION." Its pertinent provisions read:

**4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision of the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior **[\*1193]** to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of paragraph 4.5.

**4.6.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.
. . . .

**4.6.6 Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. **[\*\*10]**

In *Aberdeen Golf & Country Club v. Bliss Construction, Inc., 932 So. 2d 235 (Fla. 4th DCA 2005)*, the court reviewed a non-final order denying a motion to compel arbitration. In *Aberdeen*, the parties had entered into a standard AIA contract substantively identical to that in this case. There, as here, the owner purported to terminate the contract before completion. Unlike the situation here, however, in *Aberdeen* the contractor filed a damage action to which the owner responded with a motion requesting that the trial court stay the action and compel arbitration. The contractor argued that the owner had waived its right to insist on arbitration pursuant to the contract when it terminated the contract rather than follow the dispute resolution procedure set out in the contract. The trial court agreed and, accordingly, denied

949 So. 2d 1189, *1193; 2007 Fla. App. LEXIS 3292, **10

the motion requesting arbitration. On appeal, the court held that the trial court had correctly concluded that the owner's actions had constituted a waiver of its right to insist on arbitration. The court said:

> We agree that, after the architect's initial . . . decision, the owner's refusal to initiate mediation as a precondition [**11] to arbitration and to comply with the duty to make progress payments instead of terminating the contract could be deemed a voluntary and intentional relinquishment of the known right to arbitration.

*Id. at 240* (citing *Raymond James Fin. Servs., Inc. v. Saldukas, 896 So. 2d 707 (Fla. 2005)*). The court also said that, "[i]n repudiating the [alternative dispute resolution provisions of the contract], the owner should not be heard in litigation to claim the benefit of an [alternative dispute resolution] provision it had rejected so clearly and unequivocally." *Id. at 241.*

It should be apparent that the facts of *Aberdeen* are readily distinguishable from those of this case. In *Aberdeen*, the owner, which had repudiated the contract by terminating it, was the party seeking the benefit of the contract's dispute resolution provisions. Although the owner also repudiated the contract by purporting to terminate it in this case, here it is the contractor that is demanding enforcement of those provisions. Clearly, the equities are far different. However, appellee is not relying on the holding in *Aberdeen*. Instead, he is relying on what [**12] we believe is dicta.

For reasons that are not at all clear from the opinion, the court in *Aberdeen* examines at considerable length the dispute resolution provisions of the contract. Having done so, it then concludes that those provisions were not intended to survive termination of the contract by either party; instead, they were meant merely "to speed dispute resolutions during construction in order to bring about a successful completion of the contract." *Id. at 238.* [*1194] In support of this conclusion, the court notes:

> Significantly the contract specifies that, after notice from the complaining party, an initial decision by the architect is a condition precedent "to mediation, arbitration *or litigation* of all Claims." [e.s.] If the parties meant for arbitration to supplant all litigation--even after a termination before full completion--they would not have inserted *litigation*, the emphasized word, because their intent then would have been to eliminate litigation entirely. . . . [T]he arbitration clause does not state that it is a

precondition to litigation. In fact, nothing in the contract specifies that the arbitration provision is irrevocable and replaces [**13] *all* litigation in court.

*Id*. Relying on this analysis, the trial court in this case concluded that the dispute resolution provisions of the contract did not survive appellee's purported termination of the contract, and denied appellant's request for mediation and/or arbitration. This was error.

We are unable for several reasons to agree with the *Aberdeen* court's dicta regarding the intent of the standard AIA contract as to alternative dispute resolution mechanisms. Contrary to the suggestion in *Aberdeen*, HN7[↑] an arbitration provision does not require any type of "savings clause" to survive contract termination. On the contrary, it is well established that the duty to arbitrate does not necessarily end when a contract is terminated, as long as the dispute concerns matters arising under the contract. *E.g.*, *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B., 501 U.S. 190, 208, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991)*; *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255, 97 S. Ct. 1067, 51 L. Ed. 2d 300 (1977)*; *Doctors Assocs., Inc. v. Thomas, 898 So. 2d 159, 162 (Fla. 4th DCA 2005)*; *Qubty v. Nagda, 817 So. 2d 952, 956 (Fla. 5th DCA 2002)*; [**14] *Milbar Med. Co. v. Medicis Pharm. Corp., 741 So. 2d 1198, 1199 (Fla. 4th DCA 1999)*. Arbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration. *E.g.*, *Nolde Bros., 430 U.S. at 255*; *Doctors Assocs., 898 So. 2d at 162*; *Qubty, 817 So. 2d at 956*; *Milbar, 741 So. 2d at 1199*. Because post-termination disputes are not expressly excluded from the scope of the dispute resolution provisions of the contract, we must construe them as intended to be included.

The *Aberdeen* court apparently overlooked the definition of "Claims" contained in subparagraph 4.3.1 of the General Conditions. It provides that "[a] Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor *arising out of or relating to the Contract* [**15] ." (Emphasis added.) This language appears to us intended to be all-inclusive. It does not purport to limit "Claims" to disputes

arising before termination of the contract. Moreover, *HN8*[⬆] the emphasized language has been interpreted by our supreme court as intended "to encompass virtually all disputes between the contracting parties, including related tort claims." *Seifert v. U.S. Home Corp., 750 So. 2d 633, 637 (Fla. 1999)* (footnote omitted).

Other language in the dispute resolution provisions seems to us to support the conclusion that arbitration is intended to be the sole remedy if a party to the contract  **[*1195]** requests it. Subparagraph 4.6.1 states that "[a]ny Claim arising out of or related to the Contract [except certain Claims that are expressly exempted] . . . shall . . . be subject to arbitration." Similarly, subparagraph 4.6.2 states that "Claims not resolved by mediation shall be decided by arbitration . . . ." Finally, subparagraph 4.6.6 states that "[t]he award rendered by the arbitrator or arbitrators shall be final . . . ." We do not believe that the references to "litigation" in subparagraph 4.4.1 and to "legal or equitable proceedings" in subparagraphs **[**16]** 4.5.1 and 4.5.2 stand for the proposition that the provisions were not intended to be a substitute for litigation in court. Rather, it seems to us more reasonable to conclude that those references are intended merely to make it clear that, even if neither of the parties to the contract requests arbitration, they still must first submit their disputes to the architect, and then to mediation, before they may proceed to litigation.

The *Aberdeen* court's dicta also disregards the propositions that *HN9*[⬆] arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court, *see, e.g., Hirshenson v. Spaccio, 800 So. 2d 670, 674 (Fla. 5th DCA 2001)*; *Ocwen Fin. Corp. v. Holman, 769 So. 2d 481, 483 (Fla. 4th DCA 2000)*; *Royal Caribbean Cruises, Ltd. v. Universal Employment Agency, 664 So. 2d 1107, 1108 (Fla. 3d DCA 1995)*; and that, because arbitration agreements are a favored means of dispute resolution, any doubts concerning their scope should generally be resolved in favor of arbitration. *See, e.g., Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 289 (Fla. 1st DCA 2003)*. **[**17]** To read arbitration provisions such as that in this case as not intended to survive termination of the contract would permit parties to avoid arbitration simply by purporting to terminate the contract, thereby frustrating such policy objectives.

We hold that the dispute resolution provisions of the contract are intended to survive purported termination of

the contract by a party. Because the trial court reached the opposite conclusion, we reverse the order denying appellant's Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action; and remand with directions that the trial court order appellee to proceed to mediation and, if mediation fails, to binding arbitration, as contemplated by the agreement he signed, and that it stay further court proceedings pending compliance with that order. As the parties correctly recognize, because there is no architect for the project, compliance with subparagraph 4.4.1 of the General Conditions is not a condition precedent to mediation and/or arbitration. *See Manalili v. Commercial Mowing & Grading, 442 So. 2d 411, 413 (Fla. 2d DCA 1983)*.

REVERSED and REMANDED, with directions.

BROWNING, C.J., and PADOVANO, **[**18]** J., CONCUR.

---

**End of Document**

# EXHIBIT "B"

✛ Positive
As of: September 6, 2022 5:21 PM Z

## *Rockwood Automatic Mach., Inc. v. Lear Corp.*

Supreme Court of New York, Monroe County

February 6, 2006, Decided

2005/11145

**Reporter**
13 Misc. 3d 1219(A) *; 831 N.Y.S.2d 349 **; 2006 N.Y. Misc. LEXIS 2806 ***; 2006 NY Slip Op 51914(U) ****

**[****1]**  Rockwood Automatic Machine, Inc., Plaintiff, against Lear Corporation, Defendant.

**Notice: [***1]** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

arbitration, expiration, Lear, parties, arbitration clause, terms and conditions, purchase order, qualification, termination, contends, invoices, collective bargaining, provisions, supplied, cases, disputes

## Headnotes/Summary

**Headnotes**

**[*1219A]  [**349]**  Arbitration--Agreement to Arbitrate--Expiration of Contract.

**Judges:** KENNETH R. FISHER, JUSTICE SUPREME COURT.

**Opinion by:** Kenneth R. Fisher

## Opinion

Kenneth R. Fisher, J.

This is a motion by defendant for an order staying the action pursuant to the Federal Arbitration Act and to compel arbitration of the dispute. The action involves a goods and services contract in which Rockwood was to manufacture and supply to Lear, on a regular basis, certain screw machine parts based on specifications supplied by defendant in a Request for Quotation prepared and written by Lear. The Request for Quotation characterized the Commercial Specifications" as follows:

§ 6.01 Standard Terms and Conditions[:] Lear corporation's standard terms and conditions can be found online at *http://www.lear.com* (under Supplier PO Information).

§ 6.02 Length of Supply Contract[:] This contract will be . . . for a three year term.

(bracketed material supplied). The Request for Quotation did not itself have any reference to arbitration, but the online standard terms and **[***2]** conditions referred to in § 6.01 (quoted above) contained a broad arbitration clause.

The record does not reveal precisely how Lear accepted Rockwood's bid but the parties agree that Lear issued a purchase order dated September 13, 2001, "after accepting Rockwood's bid." Fowler Affidavit, at P7. The purchase order stated that it was "subject to and includes terms and conditions which may be accessed via the internet at "*www.lear.com* * * * Invoicing against this order for payment shall constitute binding acceptance by you of these terms and conditions." See Purchase Order dated 09/13/01, at p.14. The referenced terms and conditions contained a broad arbitration clause providing that "[a]ll disputes arising under or in connection with this order shall be finally settled by arbitration in Detroit, Michigan, before a single arbitrator appointed by the American Arbitration Association ( AAA')."

Although Rockwood alleges that the 09/13/01 order was the only order placed by Lear during what it contends was a three year term of the contract, the complaint states that Rockwood notified Lear of a price increase in October 2004, and seeks damages for invoices submitted from October 2004 **[***3]** through March 2005, when plaintiff succeeded in negotiating the requested price **[****2]** increase with Lear. The parties

Brandon Campbell

13 Misc. 3d 1219(A), *1219(A); 831 N.Y.S.2d 349, **349; 2006 N.Y. Misc. LEXIS 2806, ***3; 2006 NY Slip Op 51914(U), ****2

have an ongoing relationship to this day.

Rockwood's principal argument against the motion is that the contract in question expired prior to the time it imposed a price increase and the dispute arose. Rockwood contends that the arbitration clause was only enforceable during the length of the contract despite its invoicing for parts supplied between October 2004 and March 2005 at Lear's urging (failure of continued supply, according to Rockwood, would have meant that Lear might have to close an Ohio plant) against the 09/13/01 purchase order. Since the causes of action accrued after the contract expired, and there were no separate purchase orders attached to these transactions, Rockwood's use of the 2001 purchase order in its 2004-05 invoices being only a convenient device to obtain payment, Rockwood contends that the arbitration clause was not in effect.

Although defendant contends that the parties' agreement was governed by the on-line terms and conditions incorporated into the 2001 purchase order, which had no specified term and in its merger clause excluded [***4] any other writings between the parties as part of the contract (other than the purchase order and invoices themselves), the court will assume that the parties' agreement did have a fixed term, as plaintiff contends, for purposes of this motion. Whether it did or not may have effect on the merits of the dispute, which as I hold below should be determined by the arbitrator. So the court merely assumes, without deciding, that the agreement had a three year term. Notwithstanding, defendant contends that, by virtue of plaintiff's continued performance of the agreement after the purported expiration thereof in September 2004, the arbitration clause remained in effect. Defendant points to plaintiff's invoices during the relevant period which all referenced the original purchase order ("Your Order 12119355") which incorporated the arbitration clause. Additionally, defendant contends that, even if the contract is determined to have expired, the parties continued to deal with one another as they had previously when the contract was in effect, and therefore are presumed to have mutually assented to the continuation of the contract under the old provisions, including the arbitration provision.

 [***5]  Analysis

The Federal Arbitration Act (FAA) applies to any written agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." *9 U.S.C. § 2*. See *Singer v. Jefferies & Company, Inc., 78 N.Y.2d*

*76, 81, 575 N.E.2d 98, 571 N.Y.S.2d 680 (1991)*. "The FAA evinces Congress's intent to establish an "emphatic" national policy favoring arbitration which is binding on all courts, State and Federal' . . . [quoting *Singer, 78 N.Y.2d at 81*] such that any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.'" *Matter of Arbitration between Ayco Co, L.P., 3 A.D.3d 635, 636, 770 N.Y.S.2d 453 (3d Dept. 2004)*, quoting *Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)*.

In *Nolde Bros. v. Local No. 358, Bakery Workers Union, 430 U.S. 243, 97 S. Ct. 1067, 51 L. Ed. 2d 300 (1977)*, the Court held that, as a general matter, "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id. 430 U.S. at 253, 97 S. Ct. at 1073*. **[***6]** In other words, "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Id. 430 U.S. at 255, 97 S. Ct. at 1074*. Later, however, the Supreme Court narrowed this rebuttable presumption by concluding that it "was limited by the vital qualification that arbitration was of matters and disputes arising out of the relation governed by the contract." *Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 204, 111 S. Ct. 2215, 2224, 115 L. Ed. 2d 177 (1991)*. **[****3]** Although reaffirming Nolde Bros' holding that an arbitration agreement might survive expiration of a fixed term contract, the Court nevertheless held that the presumption of arbitrability "is limited to disputes arising under the contract." *Id. 501 U.S. at 205, 111 S. Ct. at 2225*. "A post expiration grievance can be said to arise under the contract only where [1] it involves facts and occurrences that arose before expiration, or [2] an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, **[***7]** the disputed contractual rights survives expiration of the remainder of the agreement." *Id. 501 U.S. at 205-06, 111 S. Ct. at 2225* (bracketed material supplied). The Court was not concerned that its qualification of Nolde Bros would require courts at times to determine the arbitrability issue by interpreting the provisions of the underlying agreement between the parties that had expired. Again acknowledging the continuing force of the Nolde Bros presumption in the three instances above specified, the court declared:

But we refused to apply that presumption wholesale in the context of an expired bargaining agreement, for to

Case 1:23-cv-21208-RKA   Document 1-1   Entered on FLSD Docket 03/28/2023   Page 24 of 117

Page 3 of 4
13 Misc. 3d 1219(A), *1219(A); 831 N.Y.S.2d 349, **349; 2006 N.Y. Misc. LEXIS 2806, ***7; 2006 NY Slip Op 51914(U), ****3

do so would make limitless the contractual obligation to arbitrate. Although "[d]oubts should be resolved in favor of coverage," [citation omitted], we must determine whether the parties agreed to arbitrate this dispute, and we can not avoid that duty because it requires us to interpret a provision of a bargaining agreement.

*Litton Financial Printing, 501 U.S. at 209, 111 S. Ct. at 2227*.

Although it has been observed that "[t]he Supreme Court has not commented on whether its analysis of post-labor contract arbitration requirements **[***8]** would apply to commercial agreements governed by the FAA," Mark Berger, Arbitration and Arbitrability: Toward an Expectation Model, *56 Baylor L. Rev. 753, 778 (2004)*, the Court's opinion in Litton directly addressed this issue. Litton found that the Nolde Bros presumption "is similar to the rule of contract interpretation which might apply to arbitration provisions of other commercial contracts." *Id. 501 U.S. at 208, 111 S. Ct. at 2226*. Whether this observation signaled that the Litton qualification of the Nolde Bros presumption is not applicable to other commercial contracts outside the context of collective bargaining is a question upon which the court finds no clear guidance in the cases. For example, compare the cases of *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd., 1 F.3d 639, 643-44 (7th Cir. 1993)* (applying the Nolde Bros presumption outside the context of collective bargaining to an ordinary employment agreement without reference to Litton), with, *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 307 F.3d 601 (7th Cir. 2002)* (applying the Litton qualification in an ordinary commercial contract **[***9]** context, but without any citation to Sweet Dreams). Although Litton appeared to fully distinguish the collective bargaining context from ordinary commercial disputes as quoted above, i.e., in favor of applying Nolde Bros in the commercial agreement context, there is authority, even, that it ought to be the other way around, that in the commercial arena Litton should prevail. *The Basketball Marketing Company, Inc. v. Urbanworks Entertainment, unpublished, 2004 U.S. Dist. LEXIS 22966, 2004 WL 2590506 (E.D. Pa. Nov. 10, 2004)*. I would disagree with the latter position, take Litton at its word that Nolde Bros applies to ordinary commercial disputes, distinguish Litton anyway as limited to collective bargaining disputes, Mark Berger, Arbitration and Arbitrability: Toward An **[****4]** Expectation Model, *56 Baylor L. Rev. at 778-79*, find on these facts that the presumption of arbitrability has not been rebutted, and grant the stay

on this basis alone. But the caselaw has not developed along these lines.

The Second Circuit, in its post Litton cases, has not distinguished between ordinary commercial contracts and the collective bargaining context, but has substantially refined the Litton qualification **[***10]** of the Nolde Bros presumption in *Abram Landow Real Estate v. Benova, 123 F.3d 69 (2d Cir. 1997)* (collective bargaining agreement context), and in two subsequent cases, *CPR (USA) Inc. v. Spray, 187 F.3d 245 (2d Cir. 1999)* (collective bargaining employment contract) and *ACEquip Ltd. v. American Engineering Corp., 315 F.3d 151 (2d Cir. 2003)* (construction contract dispute with subcontractor). In ACEquip Ltd. v. American Engineering Corp., the court summarized its approach as follows:

[I]n *Abram Landau Real Estate v. Benova, 123 F.3d 69, 72 (2d Cir. 1997)*, we offered further clarification as to how a court should approach a motion to compel arbitration. Problems of arbitrability arise in two contexts, first, when parties disagree whether an arbitration clause covers a particular dispute, and second, when the parties disagree not about the scope of the arbitration clause but about "whether there is even a valid agreement to arbitrate in effect at a particular time." Id. We further divided the second context into two "factual scenarios: (1) whether the parties ever entered into an arbitration agreement at all, and (2) whether an arbitration **[***11]** agreement has expired or been terminated." Id. The first type of factual scenario, involving the existence of the arbitration agreement itself, generally presents an issue for the court to decide. Id. In cases like the second type of factual scenario, the arbitrator decides issues like expiration or termination, which involve the interpretation of other contractual provisions and not of the arbitration clause itself. *Id. at 73*.

*ACEquip Ltd. v. American Engineering Corp., 315 F.3d at 155-56*. Because this case falls into the second scenario of the second context described above, Lear's motion for a stay must be granted and the matter sent to arbitration. In other words, because plaintiff seeks to enforce duties arguably "arising out of the relation governed by the contract," *Litton, 501 U.S. at 204, 111 S. Ct. at 2224*, and more particularly to enforce disputed provisions of the expired agreement allegedly made applicable between October 2004 and April 2005 by the invoices it submitted, which referenced the original purchase order, Rockwood is, "under normal principles

13 Misc. 3d 1219(A), *1219(A); 831 N.Y.S.2d 349, **349; 2006 N.Y. Misc. LEXIS 2806, ***11; 2006 NY Slip Op 51914(U), ****4

of contract interpretation, [seeking to enforce] . . . disputed contractual **[***12]** right[s] surviv[ing] expiration of the remainder of the agreement." *Litton, 501 U.S. at 206, 111 S. Ct. at 2225* (bracketed material supplied). Conversely, Lear is seeking to enforce provisions of the allegedly expired agreement, including the price term, by reference to normal principles of contract interpretation. Accordingly, even under the *Litton* qualification, the *Nolde Bros* presumption of arbitrability applies, and on these facts has not been rebutted.

New York courts also generally apply this formulation. *Matter of Primex International Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 601-02, 679 N.E.2d 624, 657 N.Y.S.2d 385 (1997)*("the prevailing general rule of both New York and Federal common law of contracts is that, absent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes **[****5]** *arising thereunder*, whether its cessation was the result of the expiration of its term, exercise of a unilateral termination option, or breach")(emphasis supplied); *Excel Group, Inc. v. New York City Transit Authority, 22 A.D.3d 794, 797, 803 N.Y.S.2d 712 (2d Dept. 2005)*; **[***13]** *L & R Exploration Venture v. Grynberg, 22 A.D.3d 221, 221-22, 804 N.Y.S.2d 286 (1st Dept. 2005)*; *Fairfield Towers Condominium Association v. Fishman, 1 A.D.3d 252, 769 N.Y.S.2d 214 (1st Dept. 2003)*(citing *Abram Landau Real Estate v. Bevona, supra*); *NEC America, Inc. v. Northeastern Office Equipment, Inc., 274 A.D.2d 339, 711 N.Y.S.2d 397 (1st Dept. 2000)*; *31 West 47th St. Co. v. Bevona, 215 A.D.2d 152, 154, 625 N.Y.S.2d 566 (1st Dept. 1995)*; *Application of Popular Publications, Inc., 36 A.D.2d 927, 928, 321 N.Y.S.2d 308 (1st Dept. 1971)*(applying pre-Litton law). The cases in Michigan the contract invokes Michigan law - are less clear, in that they apply the Litton qualification without the categorization identified above, *Gibraltar School District v. Gibraltar Mespa-Transportation, 443 Mich. 326, 505 N.W.2d 214 (1993)*, but the Second Circuit's analysis is stated to be faithful to Litton, and therefore I find that applying it would not be violative of Michigan law. In any event, the issue is governed by the FAA, not state law.

The foregoing analysis also does not run afoul of *Matter of Waldron (Goddess), 61 N.Y.2d 181, 461 N.E.2d 273, 473 N.Y.S.2d 136 (1984)*, for the reasons stated in *Matter of Meetze (La Belle), 295 A.D.2d 991, 744 N.Y.S.2d 747 (4th Dept. 2002)*, **[***14]** and esp., *Schenkers International Forwarders, Inc. v. Meyer, 164*

*A.D.2d 541, 543-44, 564 N.Y.S.2d 323 (1st Dept. 1991)*("operative criterion in deciding a case of this type is the existence of a valid issue with respect to termination of the underlying agreement" if the pleadings "raise a valid issue with respect to termination of the agreement," the matter "must be referred to arbitration").

The motion for a stay is granted.

SO ORDERED

KENNETH R. FISHER

JUSTICE SUPREME COURT

DATED: February 6, 2006

Rochester, New York

**End of Document**

# EXHIBIT "C"

⚠️ Caution

As of: September 6, 2022 5:25 PM Z

# *Bachus & Stratton, Inc. v. Mann*

Court of Appeal of Florida, Fourth District

April 6, 1994, Filed

CASE Nos. 92-1399, 92-1450

**Reporter**

639 So. 2d 35 *; 1994 Fla. App. LEXIS 3096 **; 19 Fla. L. Weekly D 789

BACHUS & STRATTON, INC., BACHUS & STRATTON SECURITIES, INC. and RICHARD LOVE, Appellants, v. CAROLYN MANN and SALVATORE LANZA, Appellees.

**Prior History: [**1]** Consolidated appeals of a non-final order from the Circuit Court for Palm Beach County; Richard B. Burk, Judge. L.T. CASE NO. CL91-9379 AO.

This Opinion Substituted By Court for Withdrawn Opinion of May 19, 1993, Reported at: *1993 Fla. App. LEXIS 5484*.

**Disposition:** AFFIRMED IN PART and REVERSED IN PART.

## Core Terms

arbitrable, trial court, post-employment, termination, employment relationship, subject to arbitration, significant aspect, appeals, motion to compel arbitration, arbitration agreement, vicarious liability, tort claim, unconvincing, signatories, defamation, partially, broker, courts

## Case Summary

### Procedural Posture

Defendants, employers and executives, appealed the order from the Circuit Court for Palm Beach County (Florida) that denied their motion to compel arbitration of all of plaintiff employee's discrimination, contract and tort claims against defendants whether arising during or after her employment. Plaintiff appealed the order that granted defendants' motion for arbitration for her pre-discharge claims against two defendants.

### Overview

When plaintiff employee was hired by defendant employers, she signed the National Association of Securities Dealers U-4 form wherein she agreed to arbitrate all disputes with defendant employers. After plaintiff was discharged, she sued defendants, her employers and two executives, alleging discrimination and various contract and tort claims. The trial court granted defendants' motion to arbitrate all claims in part and denied it in part. On appeal, the court held that because one defendant employer was the parent company of defendant immediate employer and thus vicariously liable for the acts of defendant immediate employer, arbitration was proper for both defendant employers. The court held that all claims, including discrimination claims, against defendants, whether pre- or post-discharge involving significant aspects of the employment relationship, were arbitrable. Therefore, the court affirmed that part of the order granting arbitration for plaintiff's pre-discharge claims against two defendants and denying arbitration on her post-discharge claims against defendant executives, reversed it in all other respects, and remanded the case for further proceedings.

### Outcome

The court affirmed the order in part and reversed it in part by holding that all claims against all defendants arising before discharge were arbitratable pursuant to a form that plaintiff employee signed when she was hired, but only those post-discharge claims that involved a significant aspect of her employment relationship were arbitratable. Thus, the court remanded the case with instructions consistent with its opinion.

## LexisNexis® Headnotes

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

639 So. 2d 35, *35; 1994 Fla. App. LEXIS 3096, **1

Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > General Overview

**HN1**[⬇] **Alternative Dispute Resolution, Arbitration**

The "significant aspect of the employment relationship" test is the standard by which to determine whether claims based upon post-employment incidents are subject to arbitration.

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Mandatory ADR

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Securities Law > Regulators > Self-Regulating Entities > National Association of Securities Dealers

Civil Procedure > Pretrial Matters > Alternative Dispute Resolution > General Overview

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Securities Law > ... > Self-Regulating Entities > National Securities Exchanges > General Overview

**HN2**[⬇] **Alternative Dispute Resolution, Mandatory ADR**

The National Association of Securities Dealers arbitration procedures are not inherently onerous or otherwise oppressive, but rather serve a valid public policy by expediting claims and reducing litigation in our overburdened courts.

**Counsel:** Jeffrey A. Cohen, Fort Lauderdale, for appellants (withdrawn as counsel after filing brief).

Frederick W. Ford, North Palm Beach, for Appellee-Carolyn Mann.

John D. Boykin of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, West Palm Beach, for Amicus Curiae-appellants.

**Judges:** DELL, C.J., and WARNER, J., concur. FARMER, J., concurs in result only.

**Opinion by:** PER CURIAM

# Opinion

[*35]   *ON MOTION FOR REHEARING*

PER CURIAM.

We grant rehearing, withdraw our opinion issued May 19, 1993, and substitute the following opinion.

Defendants Bachus & Stratton, Inc., Bachus & Stratton Securities, Inc., and Richard Love appeal a non-final order of the trial court partially denying their motion to compel arbitration of claims brought against them by Carolyn Mann. Mann, in a separate appeal, disputes the same order partially **[**2]** granting the defendants' motion to compel arbitration. Defendant Salvatore Lanza has not joined in these appeals. Both cases have **[*36]** been consolidated for appeal. We affirm in part and reverse in part.

In connection with her employment as an account executive at Bachus & Stratton Securities, Inc., Mann signed and filed the National Association of Securities Dealers' Uniform Application for Securities Industry Registration and Transfer ("NASD U-4 Form"). The NASD U-4 Form included a provision whereby she agreed:

to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register . . . .

Mann's employment was eventually terminated. She filed suit against the defendants alleging sexual discrimination, assault and battery, breach of contract, breach of promise of promotion, fraudulent misrepresentation, intentional infliction of emotional distress, defamation, conspiracy to defame, invasion of privacy and interference with business relationships. Defendants thereafter moved to compel arbitration of her claims based **[**3]** upon this provision.

Bachus & Stratton, Inc., the parent company of Bachus & Stratton Securities, Inc., appeals the trial court's ruling that none of Mann's claims against it were arbitrable. Mann's claims are founded upon the vicarious liability of

639 So. 2d 35, *36; 1994 Fla. App. LEXIS 3096, **3

Bachus & Stratton, Inc., for the acts of its agents and employees. Since Mann's claims against Bachus & Stratton, Inc., are based upon the vicarious liability of a principal for its agent or a master for its servant, we find the trial court erred in ruling these claims were not subject to arbitration. Although Bachus & Stratton, Inc. was not a signatory to the NASD U-4 Form agreement, a determination in arbitration that Mann had no claim against defendants Bachus & Stratton Securities, Inc., Lanza and Love would obviously preclude the successful litigation of these claims against Bachus & Stratton, Inc. See *Post Tensioned Engineering Corp. v. Fairways Plaza Assocs., 429 So. 2d 1212, 1214 (Fla. 3d DCA 1983)*.

Bachus & Stratton Securities, Inc., and Richard Love contend the trial court erred when it held only Mann's claims against them which occurred before the termination of her employment were arbitrable. **[**4]** In her brief, Mann cites *Coudert v. Paine Webber Jackson & Curtis, 705 F. 2d 78 (2d Cir. 1983)*, to support her position that an arbitration agreement does not apply to an employee's claims arising subsequent to the termination of employment. We disagree with both Mann and the trial court that her post-employment claims against Bachus & Stratton Securities, Inc., were not arbitrable.

In *Fleck v. E.F. Hutton Group, Inc., 891 F. 2d 1047 (2d Cir. 1989)*, the Second Circuit modified its earlier decision in *Coudert* and adopted *HN1*[↑] the "significant aspect of the employment relationship" test as the standard by which to determine whether claims based upon post-employment incidents are subject to arbitration. *Id. at 1053*. The court recognized the difficulty in determining what post-employment tort claims are arbitrable and ordered arbitration of the claims that "involve significant aspects of the employment relationship, *i.e.*, those claims for which resolution "depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship." **[**5]** *Id.* (citation omitted). The court determined the applicable arbitration provision [1] "would lead a reasonable applicant to expect arbitration of claims such

as [those] made during forseeable post-employment communications." *Id.* We therefore hold the trial court should have ordered arbitration of Mann's post-employment claims against Bachus & Stratton Securities, Inc., which involved significant aspects of the employment relationship. We hold, however, the trial court correctly determined Mann's claims against Richard Love and another executive which arose after the termination of her employment were not arbitrable **[*37]** since they were not signatories to the arbitration agreement.

**[**6]** Mann appeals the order compelling arbitration and argues she could not be compelled to arbitrate any of her claims. We find this argument unconvincing. *HN2*[↑] The NASD arbitration procedures are not inherently onerous or otherwise oppressive, but rather serve a valid public policy by expediting claims and reducing litigation in our overburdened courts. See *Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So. 2d 162 (Fla. 4th DCA 1989)*. We also find unconvincing Mann's position that her claims were not arbitrable because her employment fell within the statutory exemption under the Federal Arbitration Act. [2] See *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 1651-52, n.2, 114 L. Ed. 2d 26 (1991)*.

**[**7]** Mann further asserts she could not be compelled to arbitrate her Title VII sex discrimination claim. 42 U.S.C. § 2000(e). We disagree based upon recent decisions of the federal circuit courts. See *Alford v. Dean Witter Reynolds, Inc., 939 F. 2d 229 (5th Cir. 1991)* and *Willis v. Dean Witter Reynolds, Inc., 948 F. 2d 305 (6th Cir. 1991)*. Moreover, we reject Mann's position that her tort claims against Richard Love and another executive of Bachus & Stratton Securities, Inc. were not subject to arbitration. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Melamed, 453 So. 2d 858 (Fla. 4th DCA 1984)* and *Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So. 2d 286 (Fla. 3d DCA 1980)*.

Finally, we find no merit in Mann's argument that the alleged torts committed by Richard Love and the other executive were not arbitrable because they did not arise

---

[1] The arbitration provision in *Fleck*, NYSE Rule 347, required arbitration of disputes "arising out of the employment or termination of employment" of a registered representative. We note the Second Circuit observed its analysis would equally apply to an arbitration provision contained in the *NASD Code. 891 F.2d 1053*.

---

[2] *Section 1* of the Federal Arbitration Act provides in pertinent part:

Nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in interstate commerce. *9. U.S.C. § 1*

639 So. 2d 35, *37; 1994 Fla. App. LEXIS 3096, **7

out of or in connection with the business of Bachus & Stratton Securities, Inc. Mann's complaint contained sufficient allegations to demonstrate her claims arose in connection with the business **[**8]** operations of her former employer.

Accordingly, we remand this cause with instructions consistent with this opinion.

AFFIRMED IN PART and REVERSED IN PART.

DELL, C.J., and WARNER, J., concur.

FARMER, J., concurs in result only.

---

**End of Document**

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JANE DOE,                                           CASE NO. 2022-007395-CA-01

       Plaintiff,

v.

BOLLORE LOGISTICS USA, INC., a
Foreign corporation for profit; ADONIS
FERNANDEZ, an individual,

       Defendants.

_____/

### DEFENDANT BOLLORE LOGISTICS USA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant, Bollore Logistics USA, Inc. ("Defendant" or "Bollore"), files the following supplemental authority in Support of Defendant's Motion to Compel Arbitration and Stay Proceedings:

**A.**     *Rocky Creek Ret. Props. v. Estate of Fox, 19 So. 3d 1105, 1108 (Fla. 2d DCA 2009)*

        *See* Exhibit A.

**B.**     *Merrill Lynch v. Melamed, 425 So. 2d 127, 128-29 (Fla. 4th DCA)*

        *See* Exhibit B.

**C.**     *Travelers Inc. Co. v. Irby Const. Co., Inc., 816 So.2d 830 (Fla. 3d DCA 2002)*

        *See* Exhibit C.

**I.**     <u>**Exhibit A**</u>

Florida courts have held that arbitration agreements are valid and enforceable when there is no dispute the party opposing arbitration signed the agreement and was not coerced to do so.

*See., e.g., Rocky Creek Ret. Props. v. Estate of Fox*, 19 So. 3d 1105, 1108 (Fla. 2d DCA 2009) ("Here, the Estate does not dispute that Ms. Fox signed the Agreement, nor does it contend that she was incapacitated such that she was legally incapable of signing the Agreement.  Further, the Estate does not argue, nor could it argue based on the evidence before the trial court, that Ms. Fox was coerced into signing the Agreement or prevented from knowing its contents. Thus, the Agreement is a facially valid contract that is binding on the Estate and that should have been enforced by the trial court.") In the instant case, counsel for Plaintiff has stipulated that Plaintiff signed the arbitration provision. Counsel has also represented that Plaintiff does not assert she was coerced into signing the agreement. Moreover, Plaintiff's Motion for Evidentiary Hearing (filed as a supporting document to Defendant's Motion to Compel Arbitration), does not dispute the validity of the agreement. Consequently, the arbitration provision at issue should be enforced.

## II.   **Exhibit B**

In *Merrill Lynch v. Melamed*, 425 So. 2d 127, 128-29 (Fla. 4th DCA), the Court defined the required hearing procedure for the enforcement of arbitrations under the Florida Arbitration code: "the section requires a hearing to determine whether there are disputed issues regarding the making of the agreement to arbitrate or the failure to comply therewith. If the court discerns that there are no disputed issues, it is required to enter an order compelling arbitration pursuant to the terms of the parties' agreement." *Id*. at 128-29. As discussed above, Plaintiff has stipulated that she signed the arbitration provision and counsel for Plaintiff has represented to counsel for Defendant that Plaintiff does not assert she was coerced into signing the agreement. Plaintiff also does not dispute the validity of the arbitration agreement within Plaintiff's Motion for Evidentiary Hearing (filed as a supporting document to Defendant's Motion to Compel Arbitration). Consequently, Defendant asserts the Court should compel arbitration.

**III.**   **Exhibit C**

Plaintiff's Motion for Evidentiary Hearing (filed by Defendant as a supporting document) cites *Travelers Inc. Co. v. Irby Const. Co., Inc.,* 816 So.2d 830 (Fla. 3d DCA 2002)**,** for the proposition that "the trial court must hold an evidentiary hearing to determine the nature and extent of the right to compel arbitration." [*Pl Mot.*., p. 2]. However, *Travelers*' does not support Plaintiff's proposition. Instead, *Travelers* found that an evidentiary hearing was necessary after the defendant conceded "that it did not present the trial court with the written agreement supporting its position." *Id*. at 830. Not only is there no such concession in the instant case, but Plaintiff has stipulated to signing the arbitration provision at issue.

For the reasons set forth in his supplemental filing and Defendant's Motion to Compel Arbitration and Stay Proceedings, Bollore respectfully requests that this Court enter an order: (1) staying the above-captioned action; (2) compelling Plaintiff to arbitrate her claims pursuant to the terms of the Arbitration Provision; and (3) grant such further relief as the Court deems just and proper.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Case No. 2022-007395-CA-01

Dated:  September 2, 2022.

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

By: _s/Brandon U. Campbell_____
Pedro J. Torres-Díaz, Esq. (19327)
Email: *Pedro.torres@jacksonlewis.com*
Brandon U. Campbell, Esq. (112853)
 Email:*brandon.campbell@jacksonlewis.com*

*Counsel for Defendant, Bollore Logistics
USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September 2022, a true and correct copy of

the foregoing document was electronically filed with the Clerk of the Court by using Florida

Courts E-Filing Portal and furnished via electronic mail on all counsel of record identified on

the attached Service List.

_s/ Brandon U. Campbell_____
      Brandon U. Campbell, Esq.

4

Case No. 2022-007395-CA-01

## SERVICE LIST

***Jane Doe v. Bollore Logistics USA, Inc. and Adonis Fernandez***
***Case No. 2022-007395-CA-01***

| | |
|---|---|
| H. Clay Roberts, Esq. | Pedro J. Torres-Díaz, Esq. |
| Florida Bar No. 262307 | Email: *pedro.torres@jacksonlewis.com* |
| Javier A. Basnuevo, Esq. | Florida Bar No. 19327 |
| Florida Bar No. 100509 | Brandon U. Campbell, Esq. |
| ROBERTS, P.A. | Florida Bar No. 112853 |
| 113 Almeria Avenue | Email: *brandon.campbell@jacksonlewis.com* |
| Coral Gables, Florida 33134 | JACKSON LEWIS P.C. |
| Telephone:  (305) 442-17007 | One Biscayne Tower, Suite 3500 |
| Facsimile:  (305) 442-2559 | 2 South Biscayne Boulevard |
| Email:  *roberts@robertspa.com* | Miami, Florida 33131 |
| *basnuevo@robertspa.com* | Telephone: (305) 577-7600 |
| | Facsimile: (305) 373-4466 |

*Counsel for Plaintiff*

*Counsel for Defendant, Bollore Logistics USA, Inc.*

4862-0989-7265, v. 1

5

# EXHIBIT "A"

◆ Positive
As of: September 2, 2022 3:21 PM Z

## *Rocky Creek Ret. Props. v. Estate of Fox*

Court of Appeal of Florida, Second District

October 9, 2009, Opinion Filed

Case No. 2D09-196

### Reporter

19 So. 3d 1105 *; 2009 Fla. App. LEXIS 15182 **; 34 Fla. L. Weekly D 2067

ROCKY CREEK RETIREMENT PROPERTIES, INC., a/k/a ROCKY CREEK RETIREMENT PROPERTIES, INC., d/b/a ROCKY CREEK RETIREMENT PROPERTIES a/k/a ROCKY CREEK RETIREMENT PROPERTIES, INC., d/b/a ROCKY CREEK RETIREMENT VILLAGE; IRA SOCHET; WILLIAM M. LUPO; THOMAS WINGO; and WILLIAM NAZARIO (as to Rocky Creek Village a/k/a Rocky Creek Retirement Village), Appellants, v. THE ESTATE OF VIRGINIA B. FOX, by and through BANK OF AMERICA, N.A., Personal Representative, Appellee.

**Subsequent History:** Released for Publication October 28, 2009

**Prior History:** [**1] Appeal pursuant to *Fla. R. App. P. 9.130* from the Circuit Court for Hillsborough County; Frank A. Gomez, Judge.

## Core Terms

residents, signing, arbitration, arbitration agreement, trial court, contents, misrepresentation, present evidence

## Case Summary

### Procedural Posture

Appellee estate brought an action against appellants, a retirement home and related entities and individuals, in which the estate alleged that appellants had violated the decedent's rights under *§ 429.28, Fla. Stat.* (2006). Appellants filed a motion to compel arbitration, which the Circuit Court for Hillsborough County (Florida) denied. Appellants sought review of the trial court's ruling.

### Overview

While the decedent was a resident of the retirement home, she signed an arbitration agreement. The court held that the agreement constituted a valid and enforceable contract. The estate did not contend that the decedent was legally incapable of signing the agreement or that she was coerced into signing it or prevented from knowing its contents. Her alleged inability to understand that she was waiving her right to a jury trial did not vitiate her assent to the agreement in the absence of some evidence that she was prevented from knowing its contents. The agreement was not invalid for a lack of consideration. One party's agreement to submit a dispute to arbitration was sufficient consideration to support the other party's agreement to do the same because of the mutuality of obligations that the contract created. The estate failed to show that appellants' representative negligently misrepresented the agreement's terms. There was no evidence that he intended the residents to rely on his representation; rather, he encouraged residents to read it and discuss the agreement with their families and attorneys before signing and stated that they did not have to sign to remain a resident.

### Outcome

The court reversed the trial court's order. It remanded the case for referral to arbitration.

## LexisNexis® Headnotes

Contracts Law > Contract Formation > General Overview

**HN1**[⤓] **Contracts Law, Contract Formation**

As a general proposition, where one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results. Thus, a party normally is bound by a contract that the party

signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it. This is true whether a party is physically unable to read the agreement or simply chooses not to read the agreement.

Contracts Law > Contract Formation > General Overview

**_HN2_[⬇]** **Contracts Law, Contract Formation**

Florida law has long held that a party to a contract is conclusively presumed to know and understand the contents, terms, and conditions of the contract. A party has a duty to learn and know the contents of an agreement before signing it, and any inquiries concerning the ramifications of the contract should have been made before signing. Ignorance of the contents of a document does not ordinarily affect the liability of one who signs it.

Business & Corporate Compliance > ... > Contracts Law > Contract Conditions & Provisions > Arbitration Clauses

Business & Corporate Compliance > ... > Contract Formation > Consideration > Sufficient Consideration

**_HN3_[⬇]** **Contract Conditions & Provisions, Arbitration Clauses**

One party's agreement to submit a dispute to arbitration is sufficient consideration to support the other party's agreement to do the same because of the mutuality of obligations that the agreement creates.

Contracts Law > ... > Affirmative Defenses > Fraud & Misrepresentation > Material Misrepresentations

**_HN4_[⬇]** **Fraud & Misrepresentation, Material Misrepresentations**

To avoid a contract based on negligent misrepresentation, the party seeking to avoid the contract must establish the following elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or

falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

**Counsel:** James D. Moriarty of Lewis Brisbois Bisgaard & Smith, LLP, Tampa, for Appellants.

Susan B. Morrison of Law Offices of Susan B. Morrison, P.A., Tampa, and Isaac R. Carus-Ruiz of Wilkes & McHugh, P.A., Tampa, for Appellee.

**Judges:** VILLANTI, Judge. DAVIS and MORRIS, JJ., Concur.

**Opinion by:** VILLANTI

# Opinion

**[*1107]** VILLANTI, Judge.

Defendants/appellants Rocky Creek Retirement Properties, Inc., a/k/a Rocky Creek Retirement Properties, Inc., d/b/a Rocky Creek Retirement Properties, Inc., d/b/a Rocky Creek Retirement Village, Ira Sochet, William M. Lupo, Thomas Wingo, and William Nazario (collectively "Rocky Creek") appeal the trial court's nonfinal order denying their motion to stay litigation and compel arbitration in an action brought against Rocky Creek by the Estate of Virginia B. Fox ("the Estate"). Because no evidence was presented to show that the arbitration agreement was unenforceable, we reverse and remand for referral of this case to arbitration.

Virginia Fox became a resident of Rocky Creek Retirement Village in June 1997. None of the admissions paperwork that she signed at that time contained an arbitration **[**2]** agreement. However in March 2006 Rocky Creek decided, apparently at the behest of its new insurance company, to request that its residents sign an arbitration agreement. At a meeting in the dining hall, Rocky Creek Executive Director William Lupo gave each resident a copy of an amendment to the residency agreement that would require each resident to arbitrate claims against Rocky Creek ("the Agreement"). At that meeting, Lupo told the residents "that the arbitration agreement would--would help us and them from the standpoint of keeping costs down if there was a problem, and that they weren't giving up

19 So. 3d 1105, *1107; 2009 Fla. App. LEXIS 15182, **2

any of their rights if they--you know, if they signed it . . . ." Lupo further explained that in the event of a legal problem, the residents "would be able to still sue us if they--if they wanted to do that and bring us into a court . . . . I explained to them that they wouldn't have a jury trial, however, they could still bring us into a court . . . ." Lupo then encouraged the residents to read the Agreement and discuss it with their families and attorneys if they wished. He also specifically told the residents that they were not required to sign the Agreement and that nothing about **[\*3]** their residency would change if they chose not to sign the Agreement. On March 16, 2006, Ms. Fox signed the Agreement. Ms. Fox's daughter, who held a durable power of attorney for Ms. Fox, also signed the Agreement.

Ms. Fox died in December 2006. In November 2007, the Estate sued Rocky Creek for alleged violations of Ms. Fox's rights under *section 429.28, Florida Statutes* (2006). In response, Rocky Creek filed a motion to compel arbitration pursuant to the terms of the Agreement. Following a hearing on the matter, the trial court denied Rocky Creek's motion to compel arbitration, finding that Rocky Creek had failed to establish that Ms. Fox understood the rights she was giving up when she signed the Agreement, and particularly that she did not understand that she **[\*1108]** was giving up her right to a jury trial. Rocky Creek now seeks review of the trial court's ruling.

As an initial matter, we note that this case does not deal with the issue of unconscionability. Both in the trial court below and in this appeal, the Estate has specifically stated that it is not alleging that the Agreement was either procedurally or substantively unconscionable. Instead, the Estate argues only that no valid contract **[\*\*4]** to arbitrate exists despite the undisputed fact that Ms. Fox signed the Agreement. Thus, the question before this court is whether the signed Agreement constitutes a valid and enforceable contract. On the facts presented here, we hold that it does.

*HN1*[⬆] As a general proposition, "[w]here one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results." *D.L. Peoples Group, Inc. v. Hawley, 804 So. 2d 561, 563 (Fla. 1st DCA 2002)* (citing *Skinner v. Haugseth, 426 So. 2d 1127, 1129 (Fla. 2d DCA 1983)*); *see also Mandell v. Fortenberry, 290 So. 2d 3, 7 (Fla. 1974)* ("There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants."); *Dodge v. Winter Park, Inc. v. Morley, 756*

*So. 2d 1085, 1085-86 (Fla. 5th DCA 2000)* ("Generally, it is enough that the party against whom the contract is sought to be enforced signs it."). Thus, "[a] party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it." *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So. 2d 500, 504 (Fla. 4th DCA 2003)*; **[\*\*5]** *see also Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347-48 (Fla. 1977)* ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."); *Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc., 891 So. 2d 558, 558 (Fla. 3d DCA 2004)* (holding that the fact that the decedent was legally blind when she signed the arbitration agreement did not render the agree-ment invalid in the absence of evidence that she was coerced into signing it or prevented from knowing its contents. This is true whether a party is physically unable to read the agreement, *see Estate of Etting, 891 So. 2d at 558*, or simply chooses not to read the agreement, *see Fenelus, 853 So. 2d at 504*.

Here, the Estate does not dispute that Ms. Fox signed the Agreement, nor does it contend that she was incapacitated such that she was legally incapable of signing the Agreement. [1] Further, the Estate does not argue, nor could it argue based on the evidence before the trial court, that Ms. Fox **[\*\*6]** was coerced into signing the Agreement or prevented from knowing its contents. Thus, the Agreement is a facially valid contract that is binding on the Estate and that should have been enforced by the trial court.

In this appeal, as in the trial court, the Estate argues that even if Ms. Fox had read the Agreement, she would not have understood that she was waiving her right to a jury trial. Thus, according to the Estate, the Agreement is not valid and enforceable despite Ms. Fox's signature. However, Ms. Fox's alleged inability to understand the Agreement does not vitiate **[\*1109]** her assent to that Agreement in the absence of some evidence that she was prevented from knowing its contents. *HN2*[⬆] Florida law has long held that a party to a contract is "conclusively presumed to know and understand the contents, terms, and conditions of the contract."

_____

[1] We note that even if such an argument had been made, Ms. Fox's daughter, who held a facially valid durable power of attorney for her mother, also signed the Agreement.

19 So. 3d 1105, *1109; 2009 Fla. App. LEXIS 15182, **6

*Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 123 Fla. 244, 166 So. 583, 584 (Fla. 1936).* "A party has a duty to learn and know the contents of an agreement before signing it," and "[a]ny inquiries **[**7]** . . . concerning the ramifications of [the contract] should have been made before signing." *Onderko v. Advanced Auto Ins., Inc., 477 So. 2d 1026, 1028 (Fla. 2d DCA 1985); see also Berry v. Berry, 992 So. 2d 898, 900 (Fla. 2d DCA 2008).* "[I]gnorance of the contents of a document does not ordinarily affect the liability of one who signs it." *Keller v. Reed, 603 So. 2d 717, 720 (Fla. 2d DCA 1992).*

Here, the only evidence presented was that Ms. Fox was given the Agreement with an unlimited period of time in which to read it and discuss it with anyone she wished. Her decision, and that of her daughter as attorney-in-fact, not to discuss the ramifications of the Agreement with an attorney or to obtain a complete understanding of the Agreement before signing it does not render her assent to that Agreement invalid. Once Ms. Fox signed the Agreement, she was presumed to know, understand, and agree to its contents.

The Estate relies upon numerous cases standing for the proposition that a party that did not actually agree to arbitrate cannot be compelled to arbitrate. Thus, it contends that Rocky Creek must present evidence to show that Ms. Fox actually agreed to waive her right to a jury trial. **[**8]** However, the cases cited by the Estate are inapposite to the issue here. All of the cases cited by the Estate involve entities who either did not sign the arbitration agreement at all, *see, e.g.*, *Regency Island Dunes, Inc. v. Foley & Assocs. Constr. Co., 697 So. 2d 217 (Fla. 4th DCA 1997)* (holding that parent company could not be bound by arbitration agreement signed solely by subsidiary); *Karlen v. Gulf & W. Indus., Inc., 336 So. 2d 461 (Fla. 3d DCA 1976)* (holding that successor in interest could not be bound by arbitration agreement signed by predecessor in interest), or who contested the validity of their purported signature, *see, e.g.*, *Schoendorf v. Toyota of Orlando, No. 6:08-cv-767-Orl-19DAB, 2009 U.S. Dist. LEXIS 33528, 2009 WL 1075991 (M.D. Fla. Apr. 21, 2009)* (holding plaintiff was not bound by ***arbitration*** agreement when she contended that her signature was forged and the defendant presented no evidence to the contrary); *Shearson, Lehman, Hutton, Inc. v. Lifshutz, 595 So. 2d 996 (Fla. 4th DCA 1992)* (same).

Here, unlike in those cases, there is ***no dispute*** that Ms. Fox ***signed*** the Agreement, as did her daughter. In the absence of a dispute concerning the validity of Ms.

Fox's signature, Rocky Creek was not **[**9]** required to present other evidence of Ms. Fox's agreement thereto.

The Estate also argues that the Agreement is invalid due to a lack of consideration. However, this court has previously held that *HN3*[⬆] one party's agreement to submit a dispute to ***arbitration*** is sufficient consideration to support the other party's agreement to do the same because of the mutuality of obligations that the agreement creates. *Kinko's, Inc. v. Payne, 901 So. 2d 354, 355 (Fla. 2d DCA 2005).* Thus, this argument has no merit.

Finally, the Estate argues that the Agreement should be found invalid because Rocky Creek's representative misrepresented the terms of the Agreement when he discussed it with the residents at the meetings in the dining hall. However, **[*1110]** the Estate failed to present evidence sufficient to establish a negligent misrepresentation defense to the Agreement.

*HN4*[⬆] ] To avoid a contract based on negligent misrepresentation, the party seeking to avoid the contract must establish the following elements:

> (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under **[**10]** circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Atl. Nat'l Bank of Fla. v. Vest, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985); see also Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993).*

The Estate presented some evidence to show that Rocky Creek's representative, Lupo, made a misrepresentation of material fact concerning whether the Agreement allowed a resident to "sue" Rocky Creek in a "court of law." The Estate also presented some evidence that Lupo made these statements without knowledge as to their truth or falsity. However, the Estate presented no evidence that Lupo intended for the residents, including Ms. Fox, to rely on that representation when signing the Agreement. Instead, the only evidence presented shows that Lupo encouraged residents to read the Agreement and discuss it with their families and attorneys before

19 So. 3d 1105, *1110; 2009 Fla. App. LEXIS 15182, **10

deciding whether to sign it. In addition, Lupo told the residents that they did not have to sign the Agreement to remain a resident. Under **[**11]** these circumstances, the overall evidence presented was insufficient, as a matter of law, to establish that Lupo intended for Ms. Fox to rely on his representations when deciding whether to sign the Agreement. In the absence of evidence of this intent, the Estate cannot avoid the terms of the Agreement that was signed by Ms. Fox.

Thus, Rocky Creek presented the trial court with a facially valid agreement to arbitrate signed by both Ms. Fox and her daughter. The Estate did not present sufficient evidence to prove any defense to the enforcement of this facially valid agreement, and the trial court should have enforced it. Accordingly, we reverse and remand for referral of this case to arbitration.

Reversed and remanded for further proceedings.

DAVIS and MORRIS, JJ., Concur.

---

**End of Document**

# EXHIBIT "B"

✚ Positive
As of: September 2, 2022 5:38 PM Z

## *Merrill Lynch Pierce Fenner & Smith v. Melamed*

District Court of Appeal of Florida, Fourth District

December 29, 1982; Rehearing Denied Jan. 31, 1983.

No. 82-603.

**Reporter**
425 So. 2d 127 *; 1982 Fla. App. LEXIS 22258 **

MERRILL LYNCH PIERCE FENNER & SMITH, INC., and Brian Sheen, Petitioners, v. Helen MELAMED, Respondent.

## Core Terms

agreement to arbitrate, trial court, evidentiary hearing, compel arbitration, disputed issue, Arbitration, parties, order compelling arbitration, mandatory language, deny a motion, authenticity

## Case Summary

### Procedural Posture

Petitioner corporation and individual, sought a writ of certiorari to quash an order of the trial court (Florida) that denied a motion to compel arbitration against respondent individual without an evidentiary hearing, which was required by *Fla. Stat. ch. 682.03(1)* (1981), where there was a dispute about whether or not an agreement to arbitrate was made.

### Overview

In its initial review, the trial court denied a motion to compel arbitration between petitioner corporation and individual, and respondent individual. The court reversed the order and remanded the case with a directive that the trial court consider the case in light of the Federal Arbitration Act, *9 U.S.C.S. §§ 1-14 (1970)*. Thereafter, the trial court entered a second order denying a motion to compel arbitration. Petitioners sought a writ of certiorari to quash the second order. The court found that respondent refused to stipulate to the authenticity of the agreement to arbitrate and that a dispute existed as to the making of the agreement. Therefore, the court held that *Fla. Stat. ch. 682.03(1)* (1981) and the interest of justice required the trial court to conduct a full evidentiary hearing on the dispute.

Because the trial court had entered its order denying arbitration with only a non-evidentiary hearing, the court reversed the trial court's second order. The court also requested, for meaningful appellate review, that future orders in the case contain express findings of fact and conclusions of law.

### Outcome

The court reversed, in favor of petitioner corporation and individuals, the order of the trial court that denied compulsory arbitration. The court held that the applicable statute required that once there was a dispute with respondent individual as to the making of an agreement to arbitrate, the trial court was required to conduct a full evidentiary hearing on the dispute.

## LexisNexis® Headnotes

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Mandatory ADR

Civil Procedure > ... > Arbitration > Federal Arbitration Act > General Overview

International Trade Law > Dispute Resolution > International Commercial Arbitration > Arbitration

Civil Procedure > ... > Alternative Dispute Resolution > Arbitration > General Overview

Business & Corporate Compliance > ... > Pretrial Matters > Alternative Dispute Resolution > Validity of ADR Methods

*HN1*[⤓]  **Alternative Dispute Resolution, Mandatory ADR**

*Fla. Stat. ch. 682.03(1)* (1981) calls for minimal pleadings. It permits the filing of an application or motion to compel arbitration, but does not require the filing of an answer or response. Ch. 682.03(1) requires a hearing to determine whether or not there are disputed issues regarding the making of the agreement to arbitrate and whether or not there is failure to comply therewith. If the trial court discerns that there are no disputed issues, it is required to enter an order compelling arbitration pursuant to the terms of the parties' agreement. If the trial court finds disputed issues regarding the making of the agreement or the failure, neglect, or refusal to perform the same, the trial court is mandated to summarily hear and determine the issue. The latter requirement contemplates an expedited evidentiary hearing.

**Counsel: [**1]** Bennett Falk of Ruden, Barnett, McClosky, Schuster & Russell, Miami, for petitioner Merrill Lynch Pierce Fenner & Smith, Inc.

H. Michael Easley of Easley, Massa & Willits, P.A., West Palm Beach, for petitioner Brian Sheen.

F. Kendall Slinkman, West Palm Beach, for respondent.

**Judges:** Before HURLEY, Judge.  DOWNEY and GLICKSTEIN, JJ., concur.

**Opinion by:** HURLEY

# Opinion

 **[*128]** HURLEY, Judge.

When this case was last before us, [1] we held that the substantive portions of the Federal Arbitration Act [2] supersede state law and must be enforced by state courts when the prerequisites of the federal act are satisfied. [3] As a result, we reversed an order denying a motion to compel arbitration and remanded the cause with instructions to reconsider the motion in light of the applicable federal law.  Pursuant to our mandate, the trial court conducted a non-evidentiary hearing at which

---

[1] *Merrill Lynch Pierce Fenner & Smith, inc. v. **Melamed, 405 So.2d 790 (Fla. 4th DCA 1981)**.*

[2] *9 U.S.C. §§ 1 to 14 (1970).*

[3] See also *Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176 (11th Cir. 1981).*

it became evident that there was a dispute between the parties concerning the making of the agreement to arbitrate. But, rather than schedule an evidentiary hearing, the trial court entered a second order denying the motion to compel arbitration. We reverse because the trial court failed to comply with the **[**2]** procedural requirements of *section 682.03(1), Florida Statutes* (1981). [4]

Speedy resolution of disputes is the raison d'etre of arbitration. Once parties agree to arbitrate, it is essential that they have an easy and quick means to enforce their agreement to arbitrate. [5] *Section 682.03(1), Florida Statutes* (1981) and *9 U.S.C. § 4 (1970)* mirror these concerns and offer a realistic solution in the form of a carefully crafted "abbreviated and summary procedure." *Fremont Cake & Meal Co. v. Wilson & Co., 9 F.R.D. 243, 244 (D.Neb.1949)*. For example, *HN1*[↑] *section 682.03(1)* calls for minimal pleadings.  It permits the filing of an application or motion to compel **[**3]** arbitration, but does not require the filing of an answer or response.  Also, the section requires a hearing to determine whether **[*129]** there are disputed issues regarding the making of the agreement to arbitrate or the failure to comply therewith.  If the court discerns that there are no disputed issues, it is required to enter an order compelling arbitration pursuant to the terms of the parties' agreement.  On the other hand, if the court finds disputed issues regarding the making of the agreement or the failure, neglect, or refusal to perform the same, the court is mandated to "summarily hear and determine the issue…."  In our view, the latter requirement contemplates an expedited evidentiary hearing.

 **[**4]** In the case at bar, counsel for Ms. Melamed

---

[4] Because state and federal arbitration procedures are virtually identical, compare *§ 682.03(1), Fla. Stat.* (1981) with *9 U.S.C. § 4 (1970)*, we need not decide whether the procedural aspects of the federal act are so entwined with its substantive provisions as to require state implementation of both.

[5] Former Chief Judge Kaufman once observed that "[s]peed is one of the great advantages of commercial arbitration." *Necchi Sewing Machine Sales Corp. v. Necchi, S.p.A., 369 F.2d 579, 582 (2d Cir.1966)*. In fact, the benefits of speedy resolution were among the chief motivating factors behind arbitration legislation.  "Arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation.  It was never intended that these laws should be used as a means of furthering and extending delays." *Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318, 319 (4th Cir.1938)*.

Brandon Campbell

425 So. 2d 127, *129; 1982 Fla. App. LEXIS 22258, **4

refused to stipulate to the authenticity of the agreement to arbitrate. This was sufficient to indicate that a dispute existed about the making of the agreement which, in turn, required the trial court to afford the parties a full evidentiary hearing on the disputed issue.  In defense of the able trial judge, it should be noted that neither party brought the statute's mandatory language to the court's attention.  Merrill Lynch incorrectly took the position that our mandate left nothing to be done other than to enter an order compelling arbitration. Ms. Melamed, as indicated above, took the opposite tack and argued that Merrill Lynch had failed to carry its burden of establishing the authenticity of the agreement.  Under these circumstances, we believe that the interests of justice and the statute's mandatory language compel us to grant the writ of certiorari and quash the trial court's order.  Furthermore, to promote the purpose of the statute, i.e., a prompt resolution for the parties' dispute and, at the same time, to permit meaningful appellate review, we request that future orders in this case include express findings of fact and **[**5]**  conclusions of law.

Petition Granted; Order Quashed.

DOWNEY and GLICKSTEIN, JJ., concur.

---

**End of Document**

# EXHIBIT "C"

 Positive
As of: September 2, 2022 5:24 PM Z

## *Travelers Ins. Co. v. Irby Constr. Co.*

Court of Appeal of Florida, Third District

May 22, 2002, Opinion Filed

CASE NO. 3D02-169

**Reporter**
816 So. 2d 829 *; 2002 Fla. App. LEXIS 6908 **; 27 Fla. L. Weekly D 1198

TRAVELERS INSURANCE COMPANY a/s/o SPIEGEL MEATS, INC., and SPIEGEL MEATS, INC., Appellants v. IRBY CONSTRUCTION CO., INC., a foreign corporation, doing business in Florida, and FLORIDA POWER AND LIGHT COMPANY, a Florida corporation doing business in Florida, Appellees.

**Subsequent History:** [**1]  Released for Publication June 7, 2002.

**Prior History:** An appeal from the Circuit Court for Dade County, Florida, Amy Steele Donner, Judge. LOWER TRIBUNAL NO. 01-21149.

**Disposition:** Order under review reversed and matter remanded for an expedited evidentiary hearing.

## Core Terms

arbitration, evidentiary hearing, compel arbitration, sua sponte, expedited, parties

**Counsel:** Killgore, Pearlman, Stamp, Ornstein & Squires and Thomas H. Justice, III (Orlando) for appellants.

O'Connor, Chimpoulis, Restani, Marrero & McAllister and David R. Cassetty, for appellee, Irby Construction Co., Inc.

**Judges:** Before LEVY and GERSTEN, JJ., and NESBITT, Senior Judge.

**Opinion by:** NESBITT

## Opinion

[*830]  NESBITT, Senior Judge.

Travelers Insurance Company as subrogee of Spiegel

Meats, Inc., and Spiegel Meats, Inc., filed a complaint for negligence against Irby Construction Company and Florida Power & Light Company. In response to the complaint, Irby served a "Motion to Dismiss for Improper Venue." At a hearing on that motion, the lower court denied the motion, but *sua sponte*, converted the motion into a Motion to Abate the Action Pending Arbitration. The court then entered an order granting that motion, which Travelers here appeals. We have jurisdiction. *Fla. R.App. P. 9.130(a)(3)(C)(v)*.

In ruling on a motion to compel arbitration, a court must consider: (1) whether the parties have entered [**2]  into a valid arbitration agreement, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration has been waived. See *Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)*. A court must summarily hear and determine disputed issues regarding arbitration in an expedited evidentiary hearing. See *Jalis Constr., Inc. v. Mintz, 724 So. 2d 1254 (Fla. 4th DCA 1999)*.

Here, the parties clearly disagree as to the existence and applicability of any agreement to arbitrate. Irby concedes that it did not present the trial court with the written agreement supporting its position. [1] Under the facts at hand, we agree with Travelers that the trial court's sua sponte actions and were inadequate to determine the contested point. Accordingly, the order under review is reversed and the matter remanded for an expedited evidentiary hearing to make a determination as to the nature and extent of the right to compel arbitration, after consideration of those elements outlined in *Seifert, 750 So. 2d 633*.

[**3]

---

**End of Document**

---

[1] Despite this court's effort to substantiate the lower court's ruling by requesting supporting documentation, the parties' submissions only confirm the need for an evidentiary hearing.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-007395-CA-01
SECTION: CA22
JUDGE: Beatrice Butchko

**JANE DOE**

Plaintiff(s)

vs.

**BOLLORE LOGISTICS USA, INC. et al**

Defendant(s)

_____/

**ORDER ON DEFENDANT BOLLORE LOGISTICS USA, INC.'S UNOPPOSED MOTION
TO CANCEL THE SPECIALLY SET HEARING SCHEDULED FOR AUGUST 8, 2022**

THIS CAUSE came before the Court upon Defendant Bollore Logistics USA, Inc.'s

Unopposed Motion to Cancel the Specially Set Hearing Scheduled for August 8, 2022, in the

above-captioned matter. Having reviewed the court file and being otherwise fully advised in the

premises, it is hereby:

**ORDERED AND ADJUDGED** that the specially set hearing scheduled for August

8, 2022 at 3:30 p.m. is canceled.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 2nd day of August,
2022.

2022-007395-CA-01 08-02-2022 9:22 AM
Hon. Beatrice Butchko

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Brandon Ulysees Campbell, brandon.campbell@jacksonlewis.com
Brandon Ulysees Campbell, illeana.collazo@jacksonlewis.com
Brandon Ulysees Campbell, miamidocketing@jacksonlewis.com
Dethie Castillo, dcastillo@jud11.flcourts.org
H. Clay Roberts, roberts@robertspa.com
H. Clay Roberts, gloria@robertspa.com
H. Clay Roberts, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, basnuevo@robertspa.com
Javier Alejandro Basnuevo Valdivia, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, keren@robertspa.com
Pedro Jaime Torres-Diaz, pedro.torres-diaz@jacksonlewis.com
Pedro Jaime Torres-Diaz, debbie.vega@jacksonlewis.com
Pedro Jaime Torres-Diaz, miamidocketing@jacksonlewis.com


**Physically Served:**

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-007395-CA-01

JANE DOE,

      Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a
foreign corporation for profit; ADONIS
FERNANDEZ, an individual

      Defendants.

_____/

## MOTION FOR EVIDENTIARY HEARING ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

      The Plaintiff, JANE DOE, requests this court enter an Order requiring, and scheduling, an evidentiary hearing on the Defendant's Motion to Compel Arbitration and Stay Proceedings, and states:

1. Defendant's Motion contains a central factual assertion that is in dispute "Plaintiff therefore agreed to arbitration as a condition of her employment." Motion to Compel Arbitration and Stay Proceedings, p. 3.

2. A central issue regarding Defendant's Motion, is where an expired agreement titled "Employee's Agreement Not to Disclose Corporate Confidential Information" will also operate to force Plaintiff to arbitrate her sexual assault, hostile work environment, and constructive discharge claims.

3. Attached to the Defendant's Motion, and in support of it, Defendant submitted an affidavit signed by "Claire Roussie." Plaintiff has requested a deposition of Ms. Roussie, as well as Alain Castillo, the representative who signed the alleged

agreement, and a corporate representative of the Defendant to testify on issues involving this agreement.

4. Plaintiff intends to oppose Defendant's Motion to Compel Arbitration on both factual and legal basis, and Plaintiff intends to offer evidence the agreement is not binding, was procured in a procedurally unconscionable way, and is substantively unconscionable.

5. When ruling on a motion to compel arbitration, the Court must consider: (1) whether the parties have entered into a valid arbitration agreement; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. *Travelers Inc. Co. v. Irby Const. Co., Inc.*, 816 So.2d 829 (Fla. 3d DCA 2002).

6. When the parties disagree as to the existence and applicability of an agreement to arbitrate, the trial court must hold an evidentiary hearing to determine the nature and extent of the right to compel arbitration. *Id.* Such a hearing should be set in an expedited manner by the trial court. *Id*. at 830.

7. Here, the Plaintiff disputes the applicability of the arbitration clause contained in the "Employee's Agreement Not to Disclose Corporate Confidential Information," the Plaintiff disputes the extent of this agreement, and the Plaintiff disputes that this agreement is even enforceable due to procedural and substantive unconscionability.

8. The Plaintiff requires certain testimony and documents in order to fully respond to the Defendant's Motion, and she has already taken steps to secure that evidence.

9. The Plaintiff is entitled to gather and present evidence on these disputes, so that the Court may make an informed decision on the merits of Defendant's Motion.

WHEREFORE, the Plaintiff, JANE DOE, respectfully requests this Honorable Court enter an Order requiring an evidentiary hearing on the Defendant's Motion to Compel Arbitration and Stay Proceedings, setting a discovery and briefing schedule on this Motion, setting an evidentiary hearing on an expedited manner, and any other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed via the Florida Courts E-Filing Portal/ECF and was sent by E-mail from the Florida Courts' E-Filing Portal system on this 27th day of July, 2022 to: Pedro J. Torres-Diaz, Esq., pedro.torres-diaz@jacksonlewis.com; Brandon U. Campbell, Esq., brandon.campbell@jacksonlewis ; JACKSON LEWIS P.C., One Biscayne Tower, Suite 3500, 2 South Biscayne Boulevard, Miami, Florida 33131.

ROBERTS, P.A.
*Co-Counsel for Plaintiff*
113 Almeria Avenue
Coral Gables, FL 33134
Fax: (305)442-2559
Email: banuevo@robertspa.com

By:  */s/:  Javier A Basnuevo*
JAVIER A BASNUEVO
Fla. Bar No.:  100509

Filing # 153902572 E-Filed 07/22/2022 03:51:29 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-007395-CA-01

JANE DOE,

      Plaintiff,

v.

BOLLORE LOGISTICS USA, INC., a
Foreign corporation for profit; ADONIS
FERNANDEZ, an individual,

      Defendants.

_____/

### DEFENDANT BOLLORE LOGISTICS USA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant, Bollore Logistics USA, Inc. ("Defendant"), pursuant to Fla. R. Civ. P. 1.140 (b)(1) and (6) and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") moves to stay Plaintiff's claims, compel her to submit those claims to arbitration, and states in support:

### INTRODUCTION

Plaintiff, Jane Doe ("Plaintiff"),[1] filed this action against Defendant alleging gender discrimination, hostile work environment, and retaliation in violation of the Florida Civil Rights Act, Fla. Stat. § 760. *et seq.* ("FCRA") (Counts I-III), assault and sexual battery (Counts IV – V) against Adonis Fernandez ("Fernandez") individually,[2] that Bollore is vicariously liable for Fernandez's alleged acts of assault and sexual battery (Count VI), and negligent retention (Count VII).

---

[1] Counsel for Plaintiff has stipulated that Plaintiff is a party to the Agreement (as the term is defined below) supporting the instant Motion, and that Plaintiff executed the agreement. Consequently, the authenticity of Plaintiff's signature is not at issue.

[2] Defendant notes that Plaintiff has not represented to the Court that she has effectuated service upon Defendant Fernandez. Further, the undersigned counsel do not represent him.

Although Defendant denies Plaintiff's claims in their entirety, this matter should be stayed and Plaintiff should be compelled to arbitrate her claims. As a term and condition of her employment, Plaintiff signed a valid, mutually binding nondisclosure agreement that contained an arbitration provision requiring her to arbitrate claims that arose out of her employment. Her refusal to do so lacks any foundation in law or fact.

While Defendant acknowledges that the nondisclosure agreement invokes New York law, Plaintiff is yet required to arbitrate her claims under the Federal Arbitration Act (the "FAA"). Indeed, New York law is preempted by the FAA. Consequently, New York's prohibition against arbitrating employment discrimination claims does not apply.

Additionally, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("the FAA Amendment") does not prohibit the arbitration of Plaintiff's sexual harassment and sexual battery claims because Plaintiff's claims accrued prior to the date the FAA Amendment was enacted.

Lastly, Plaintiff violated Paragraph 1 of this Court's Case Management Procedure for Motion Practice entitled "Duty to Communicate." Plaintiff, through her counsel, refused to make a good faith effort to resolve her objections with the arbitration provision. Specifically, Plaintiff refused to identify her grounds for challenging the arbitration provision when the undersigned inquired.

## BACKGROUND

Defendant is a national logistics and distribution company that transports goods, and services the supply chain needs of its customers throughout the United States. *See* Declaration of Claire Roussie ("Roussie Decl."), ¶ 3, attached hereto as Exhibit A. On June 1, 2017, Plaintiff began working with Defendant as a Picker/Packer. Ex. A at ¶ 4. On that day, Plaintiff signed the

"Employee's Agreement Not to Disclose Corporate Confidential Information" (hereinafter the "Agreement"). *See* Exhibit 1 to Roussie Decl., the Agreement; *see also* Ex. A at ¶ 5.

Paragraph 9 of the Agreement contains a section entitled "Arbitration." Ex. 1 to Roussie Decl. at p. 3, § 9 (hereinafter "Arbitration provision"). The Arbitration provision provides that "any controversy or claim arising out of Employee's employment with BOLLORE LOGISITCS or the termination thereof, including without limitation any claim related to this Agreement or the breach thereof, shall be resolved by binding arbitration in accordance with the rules then in effect of the American Arbitration Association [("AAA")]." Ex. 1 to Roussie Decl. at p. 3, § 9; Roussie Decl., ¶ 5. Plaintiff therefore agreed to arbitration as a condition of her employment. Ex. 1 to Roussie Decl. at p. 1, 3, § 9.

Despite Plaintiff's agreement to submit to arbitration "any controversy or claim arising out of Employee's employment with BOLLORE LOGISITCS or the termination thereof," Plaintiff filed her Complaint alleging 7 causes of action against Defendant. *See* Compl., Counts I through VII. Plaintiff asserted claims for gender discrimination, hostile work environment, and retaliation in violation of the FCRA, Florida common law claims of assault and sexual battery against Fernandez individually, that Defendant is vicariously liable for Fernandez's assault and sexual battery, and negligent retention.[3] *Id.* All claims arise out of Plaintiff's employment with Defendant. *See* Compl., ¶¶ 6-29, entitled "General Allegations." Given that these claims fall squarely within the purview of the Arbitration provision, and for the reasons set forth in greater detail below, the Court should stay these proceedings and compel Plaintiff to arbitrate her claims.

---

[3] The Arbitration provision also covers Plaintiff's individual claims brought against Defendant Fernandez. *See Cicchetti v. Davis Selected Advisors,* Case No.: 02 Civ. 10150 (RMB), 2003 U.S. Dist. LEXIS 20747 *5-8 (S.D.N.Y. Nov. 17, 2003) (holding that an individual supervisor was entitled to arbitrate claims brought by a former employee because the employee's claims against the supervisor were "inextricably" intertwined with the former employee's claims against the employer).

CASE NO. 2022-007395-CA-01

I.      **The Federal Arbitration Act Requires the Court to Enforce the Parties' Valid Arbitration Provision**

Paragraph 8 of the Agreement requires it to be "construed and enforced in accordance with and governed by the laws of the State of New York." Ex. 1 to Roussie Decl. at pp. 2-3, § 8. Further, "Florida courts are required to enforce choice of law provisions in contracts unless the law of the foreign state contravenes the strong public policy of Florida or is unjust or unreasonable." *Default Proof Credit Card Sys. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008). Despite the applicability of New York law, the FAA controls Plaintiff's obligation to arbitrate her claims. Indeed, the United States Supreme Court has found that the FAA "preempt[s] any state rule discriminating on its face against arbitration…." *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (citing *AT&T Mobility Corp. v. Concepcion*, 563 U.S. 333, 341 (2011)).

The FAA, 9 U.S.C. §§ 1, et seq., evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983)); *see also Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Consequently, courts "rigorously enforce" arbitration agreements. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004), *cert. denied*, 544 U.S. 1061 (2005).

Where a party is "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration," that party "may petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Florida courts are also required to enforce arbitration provisions under the FAA. *Sachse Constr. & Dev. Corp. v. Affirmed Drywall, Corp.*, 251 So. 3d 1005, 1009 (2d

DCA   2018)   ("[A] Florida court must enforce an   arbitration   agreement   that   is   valid   and enforceable under the FAA even when the agreement would be unenforceable under Florida law"). If the court finds that a valid arbitration agreement exists and applies to the dispute at hand, and that one party has failed or refused to arbitrate the dispute, the court must compel arbitration. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974) (a court should "order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that a court may only decide "whether the parties are bound by a given arbitration clause" when determining whether or not to compel arbitration)).

Further, the FAA and United States Supreme Court support the enforcement of arbitration agreements.  The FAA was enacted by Congress "to reverse decades of judicial hostility toward arbitration agreements." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-627 (1985)); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991); *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272 (1995); *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987). The FAA establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion,* 563 U.S. at 345 (*quoting Moses H. Cone,* 460 U.S. at 24); *see also Stolt-Nielsen S.A. v. Animal Feeds Intern. Corp.,* 559 U.S. 662, 664 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control") (citations omitted)).

Under the FAA, arbitration clauses like the Arbitration provision "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, because arbitration is a highly favored means of resolving disputes, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Indeed, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 344 (citation omitted).

Guided by the FAA, the United States Supreme Court has repeatedly held that arbitration agreements are to be read liberally to effectuate their purpose. *Moses H. Cone*, 460 U.S. at 25; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000). Indeed, the FAA requires courts to "rigorously enforce" arbitration agreements. *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Mitsubishi Motors Corp.*, 473 U.S. at 626; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).[4]

The FAA also applies because of the interstate commerce implications in this matter. Pursuant to the FAA, a written arbitration agreement to settle disputes related to "a transaction involving commerce" or a controversy "arising out of such contract or transaction" is "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Picard,* 564 F.3d at 1252. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more

---

[4]     The Florida Supreme Court has held that "[i]n Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), to the extent the FAC is not in conflict with the FAA." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456 (Fla. 2011); *see also Basulto v. Hialeah Auto.,* 141 So. 3d 1145, 1153 (Fla. 2014) (When interstate commerce is implicated, arbitration agreements must be enforced in a manner consistent with the FAA)).

familiar term 'affecting commerce'– words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003).

The FAA applies because Defendant's overall employment practices are related to its distribution of goods, which affects interstate commerce. *See Lipscomb v. Payroll Mgmt.,* Case No.: Case No. 3:12cv88-MCR/CJK. 2012 U.S. Dist. LEXIS 110682, *5 (N.D. Fla. June 13, 2012) ("although the plaintiff's individual work and contacts may have been limited to Florida, PMI's overall employment practices constitute activity involving commerce. Thus, the FAA's interstate commerce requirement is satisfied."); *see also Petrie v. Clark Moving & Storage, Inc.*, 09-CV-06495, 2010 U.S. Dist. LEXIS 48460, *9 (W.D.N.Y. May 17, 2010) (enforcing the FAA after finding that a local storage contract between a New York company and New York residents involved interstate commerce because the company conducted operations in 3 different states). Here, Defendant is a national logistics and distribution company that transports goods throughout the United States. *See* Ex. A. ¶ 3**.** Plaintiff signed the Agreement with Defendant as a term and condition of her employment. *See* Ex. 1 to Roussie Decl. at p. 1, 3, § 9. As such, the Court should compel Plaintiff to arbitrate her claims pursuant to the FAA.

## II.  **The Agreement Requires Plaintiff to Arbitrate Her Claims.**

In determining whether to compel arbitration pursuant to the FAA, courts generally consider (1) whether there exists a valid agreement to arbitrate and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *See, e.g., Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 78 (2010); *Levin v. GFI Sec., L.L.C.*, 100773/2005,

CASE NO. 2022-007395-CA-01

2005 N.Y. Misc. LEXIS 8533, at *9 (N.Y. Sup. Nov. 18, 2005) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).[5]

If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that . . . [it] should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25 (emphasis added). Upon finding that a dispute is subject to a binding arbitration agreement, the FAA *mandates* courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

**A.    The Parties Have A Valid Agreement to Arbitrate.**

Ordinary state law principles governing the formation of contracts determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). As discussed above, Paragraph 8 of the Agreement requires it to be "construed and enforced in accordance with and governed by the laws of the State of New York." Ex. 1 to Roussie Decl. at pp. 2-3, § 8.  Consequently, we analyze the validity of the Agreement under New York law.

"A valid arbitration agreement requires a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement." *Zhu v. Hakkasan NYC LLC*, No. 16 Civ. 5589 (KPF), 2017 U.S. Dist. LEXIS 195158, at *13 (S.D.N.Y. Nov. 28, 2017) (internal citation

---

[5]    Under Florida law, the Court is required to review whether Defendant waived the right to arbitration in evaluating whether to compel arbitration. *Raymond James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Although federal and New York law applies, Defendant has not waived the right to arbitration under Florida law either. The parties have only entered into agreed extensions of time for Defendant to respond to the complaint. Otherwise, Defendant's sole action in this matter has been to pursue arbitration.

omitted). "By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement." *Id*. (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). "[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." *Gold*, 365 F.3d at 149 (internal citations and quotations omitted). "As is the case with any contract, the intention of the parties is controlling, but under the FAA those intentions are generously construed as to issues of arbitrability.'" *Singer v. Jefferies & Co.*, 78 N.Y.2d 76, 82 (1991) (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)).

Here, Plaintiff accepted Defendant's offer to submit her claims to arbitration as a condition of her employment. Ex. 1 to Roussie Decl. at p. 1, 3, § 9. As demonstrated in Exhibit 1, Plaintiff executed the Agreement on June 1, 2017.  Ex. 1 to Roussie Decl.  at p. 3, § 9; Roussie Decl., ¶ 5. Further, there is no evidence of fraud or any other wrongful act on the part of Defendant.  Indeed, Plaintiff has not proffered any such evidence and refused to notify Defendant of the grounds upon which she objected to the Arbitration provision. Therefore, the Arbitration provision is valid.

**B.    Plaintiff's Claims Fall Within Scope of the Arbitration Provision**

There can be no question that all of Plaintiff's claims fall within the scope of the Arbitration provision.  "[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). "Further, Courts in [the Second] Circuit have held that 'doubts as to whether a claim falls

CASE NO. 2022-007395-CA-01

within the scope of [an arbitration] agreement should be resolved in favor of arbitrability.'" *Savarese v. J.P. Morgan Chase*, No. 16-Civ. 321 (JFB) (SIL), 2016 U.S. Dist. LEXIS 159765, at *16 (E.D.N.Y. Nov. 16, 2016) (quoting *Hartford Acc. & Indem. Co.*, 246 F.3d at 226).

Moreover, broad arbitration provisions, such as the one at issue here, have been enforced in the Second Circuit. *Thomas v. Pub. Stor., Inc.*, 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013) (citing *Genesco*, 815 F.2d at 845) (upholding arbitration clauses that generally referred to "all claims and disputes of whatever nature arising under the contract" and "any controversy arising out of or relating to his contract"); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("[W]e have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute") (internal citations and quotations omitted); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 132 (S.D.N.Y. 1993) (collecting cases).

Plaintiff agreed to arbitrate "any controversy or claim arising out of Employee's employment with BOLLORE LOGISITCS or the termination thereof." Ex. 1 to Roussie Decl. at p. 3, § 9; Roussie Decl., ¶ 5. Plaintiff's factual allegations demonstrate that her claims arise out of her employment with Defendant. *See* Compl., ¶¶ 6-29, entitled "General Allegations." Indeed, Plaintiff alleges that she was subjected to improper sexual acts by her manager while working within Defendant's Miami facility. *See* Compl., ¶ 22. But even if there were any ambiguity as to whether these claims fell within the scope of the Arbitration provision, courts in the Second Circuit have held that "doubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability." *Savarese v. J.P. Morgan Chase*, 2016 U.S. Dist.

LEXIS 159765 at *16 (internal citations omitted).   Consequently, this Court should compel

Plaintiff to arbitrate her claims before the AAA as required in the Arbitration provision.

## III.    The FAA Preempts New York Law That Prohibits the Arbitration of Discrimination Claims

The New York Civil Practice Law and Rules ("CPLR") § 7515 prohibits mandatory

arbitration of any allegation or claim of discrimination. However, CPLR § 7515 only applies to

the extent it is not inconsistent with federal law. The FAA provides that arbitration agreements

"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2. The CPLR, by contrast, purports to preclude or

render null and void otherwise valid agreements to arbitrate discrimination claims. CPLR §

7515(a)(2). By purporting to invalidate agreements for reasons outside those permitted by the

FAA, CPLR § 7515 is "inconsistent with federal law" and, on its face, does not apply to the

Arbitration provision at issue here. *Rollag v. Cowen Inc.*, No. 20-CV-5138 (RA), 2021 U.S. Dist.

LEXIS 39942, at *15 (S.D.N.Y. Mar. 3, 2021) (explaining that the "law's outright prohibition on

the arbitration of discrimination claims is plainly inconsistent with the FAA and the Supreme

Court's interpretation of that federal law").

In addition to being inconsistent with the FAA, to the extent that CPLR § 7515 applies to

the Arbitration provision, the FAA preempts it. Congress, in passing the FAA, "withdrew the

power of the states to require a judicial forum for the resolution of claims which the contracting

parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "When

state law prohibits outright the arbitration of a particular type of claim, the analysis is

straightforward: [t]he conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 341. That

is exactly what CPLR § 7515 purports to do – prohibit outright the arbitration of a particular type

of claim, discrimination claims – and it is therefore preempted by the FAA. *See also Progressive*

*Cas. Ins. Co. v. C.A. Reeseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (New York rule that required arbitration agreements to be proven with a heightened "express, unequivocal agreement" standard was preempted by the FAA) (quotations omitted)). Therefore, to the extent CPLR § 7515 applies, it is preempted by the FAA under controlling Supreme Court and Second Circuit precedent. *See Concepcion*, 563 U.S. at 341; *Progressive Cas. Ins. Co.*, 991 F.2d at 46.

In addressing this issue, United States District Courts in New York have held on several occasions both that (1) CPLR § 7515 is inconsistent with the FAA and (2) that CPLR § 7515 does not displace the strong presumption under the FAA that arbitration agreements are enforceable. *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 397 (S.D.N.Y. 2021); *White v. WeWork Cos., Inc.*, No. 20-cv-1800 (CM), 2020 U.S. Dist. LEXIS 102354, at *5 (S.D.N.Y. June 11, 2020) (holding that Section 7515 was preempted by the FAA); *Latif v. Morgan Stanley & Co. LLC*, 18cv11528 (DLC), 2019 U.S. Dist. LEXIS 107020, (S.D.N.Y. June 26, 2019) (holding that Section 7515 was preempted by the FAA and granting defendant's motion to compel arbitration as to Plaintiff's discrimination, hostile work environment, and retaliation claims). In light of the above, this Court should stay proceedings and compel arbitration.

## IV.   The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 Does Not Apply to Plaintiff's Claims.

The Court should reject any argument that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "FAA Amendment") prohibits the pre-dispute arbitration of Plaintiff's sexual battery and harassment claims because the Plaintiff's claims accrued before the FAA Amendment was enacted. The recent FAA Amendment provides, in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named

> representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
>
> *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021*, Pub. L. No. 117-90, 136 Stat. 26.

The Amendment further provides that "this Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that *arises or accrues on or after the date of enactment of this Act*." *Id.* (emphasis added.). The FAA Amendment was signed by President Biden on March 3, 2022, which is the operative "date of enactment." April 23, 2021, the date of Plaintiff's resignation, was the last date any of Plaintiff's claims could have accrued. *See* Compl. ¶ 29. Thus, Plaintiff's claims indisputably arose and accrued *prior* to the enactment of the FAA Amendment on March 3, 2022. Therefore, the FAA Amendment does not apply here.

The plain language of the FAA Amendment indicates that it does not apply unless the factual allegations supporting claims of sexual harassment and assault took place *after* March 3, 2022. Case law in analogous circumstances supports this conclusion. *See Quiles v. City of NY*, 2003 US Dist LEXIS 14238, at *21 (S.D.N.Y. Aug. 13, 2003) (explaining that under New York law an assault or battery claim accrues on the date of the assault or battery); *Zimmerman v. Poly Prep Country Day Sch.*, 888 F Supp 2d 317, 337 (E.D.N.Y. 2012) (citing *Brooklyn Union Gas Co. v. Hunter Turbo Corp.*, 241 A.D.2d 505, 660 N.Y.S.2d 877, 878 (2d Dep't 1997) ("It is well established that in any action to recover damages for negligence . . . , the plaintiff's claim accrues upon the date of injury."); *Flaherty v. Metromail Corp.*, 235 F3d 133, 137 (2d Cir. 2000) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (employment discrimination claims accrue on the date that the employee "knows or has reason to know of the injury which is the basis of his

action"). Accordingly, the recent FAA Amendment does not apply to Plaintiff's claims and should not preclude Defendant from compelling arbitration.

## CONCLUSION

For the reasons set forth above, the Arbitration provision is valid, and Plaintiff's claims fall within the scope of the Agreement; therefore, Plaintiff should be compelled to arbitrate her claims.

WHEREFORE, Defendant, BOLLORE LOGISTICS USA, INC., respectfully requests that this Court enter an order: (1) staying the above-captioned action; (2) compelling Plaintiff to arbitrate her claims pursuant to the terms of the Agreement and the Arbitration provision; and (3) grant such further relief as the Court deems just and proper.

## CONFERRAL CERTIFICATE

Pursuant to Paragraph 1 of this Court's Case Management Procedure for Motion Practice entitled "Duty to Communicate," Defendant Bollore made a good faith effort to narrow the issues and/or resolve Plaintiff's objections to the Arbitration provision before filing the instant motion.

Dated:  July 22, 2022.

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466


By: *s/Brandon U. Campbell*
Pedro J. Torres-Díaz, Esq. (19327)
Email: *Pedro.torres@jacksonlewis.com*
Brandon U. Campbell, Esq. (112853)
Email:*brandon.campbell@jacksonlewis.com*

*Counsel for Defendant, Bollore Logistics USA, Inc.*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court by using Florida Courts E-Filing Portal and furnished via electronic mail on all counsel of record identified on the attached Service List.

*s/ Brandon U. Campbell*
Brandon U. Campbell, Esq.

## **SERVICE LIST**

### *Jane Doe v. Bollore Logistics USA, Inc. and Adonis Fernandez*
### *Case No. 50-2019-CA-013108-XXXX-MB AN*

H. Clay Roberts, Esq.
Florida Bar No. 262307
Javier A. Basnuevo, Esq.
Florida Bar No. 100509
ROBERTS, P.A.
113 Almeria Avenue
Coral Gables, Florida 33134
Telephone:  (305) 442-17007
Facsimile:  (305) 442-2559
Email:  *roberts@robertspa.com*
*basnuevo@robertspa.com*

*Counsel for Plaintiff*

Pedro J. Torres-Díaz, Esq.
Email: *Pedro.torres@jacksonlewis.com*
Florida Bar No. 19327
Brandon U. Campbell, Esq.
Florida Bar No. 112853
Email: *brandon.campbell@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

*Counsel for Defendant, Bollore Logistics USA, Inc.*

4859-4000-0039, v. 2

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-007395-CA-01

JANE DOE,

      Plaintiff,

v.

BOLLORE LOGISTICS USA, INC., a
Foreign corporation for profit; ADONIS
FERNANDEZ, an individual,

      Defendants.

_____/

## DECLARATION OF CLAIRE ROUSSIE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

I, CLAIRE ROUSSIE, declare and state as follows:

1.     I am the Human Resources Manager for Defendant Bollore Logistics USA, Inc. ("Bollore" or "Defendant"). I have been employed by Bollore as Human Resources Manager since April 2021 and have worked in Bollore's Human Resources Department since February 2019. I make this declaration in support of Bollore's Motion to Compel Arbitration and Stay Proceedings. Except as otherwise indicated, I have personal knowledge of the facts set forth in this declaration and, if called upon to do so, could and would testify as follows:

2.     In my capacity as Human Resources Manager for Bollore, and during the ordinary course of business, I am aware of Bollore's general business and the geographical scope of its operations. I also have access to data and files, including personnel files, regarding current and former Bollore employees.

3.     Bollore is a national logistics and distribution company that transports goods and services the supply chain needs of its customers throughout the United States. Bollore has offices

in 18 cities across the country and transports goods to and on behalf of its customers by land, sea, and air across state lines.

4.      Based on my review of the personnel files of Plaintiff, I am informed and believe, and on that basis testify, that Plaintiff began working with Bollore as a Picker/Packer on or around June 1, 2017.

5.      Plaintiff's personnel file includes the Employee's Agreement Not to Disclose Corporate Confidential Information (the "Agreement') that Plaintiff signed on or around June 1, 2017.   Bollore's arbitration provision is contained within paragraph 9 of the Agreement (the "Arbitration provision").   The Agreement is attached hereto as **Exhibit 1**.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 2̲k̲t̲ day of July, 2022, in Houston, Texas.

CLAIRE ROUSSIE
HUMAN RESOURCES MANAGER USA

4884-2924-7016, v. 1

# EXHIBIT "1"



**BOLLORÉ**
**LOGISTICS**

## EMPLOYEE'S AGREEMENT
## NOT TO DISCLOSE CORPORATE CONFIDENTIAL INFORMATION

<u>INTRODUCTION</u>

Agreement made this <u>1st</u> day of <u>June</u>_____ 2017 between Bollore Logistics., a New York Corporation, having it's principal place of business at 150-10 132nd Avenue, Jamaica, NY  11434 (hereinafter referred to as Bollore Logistics) and  �no██████████████████_____ an employee of Bollore Logistcis residing at ▋████████████████_____ (hereinafter referred to as the employee).

**WITNESSETH**

**WHEREAS** certain papers, lists, and documents relate directly to the activity of **BOLLORE LOGISITCS**, or its clients, customers or vendors,

**WHEREAS** those items used in **BOLLORE LOGISITCS** are secret, confidential, unique, and valuable,

**WHEREAS** those items were developed by **BOLLORE LOGISITCS** at great cost and over a long period of time,

**WHEREAS** disclosure of any items to anyone other than **BOLLORE LOGISITCS 's** officers, agent, or authorized employees will cause **BOLLORE LOGISITCS** irreparable injury,

**WHEREAS BOLLORE LOGISITCS** desires to appoint the **employee** as <u>Picker/Packer</u>_____,

**WHEREAS** the **employee** owes loyalty and allegiance to **BOLLORE LOGISITCS**,

**WHEREAS** this loyalty is undivided and the allegiance is influenced in action by no consideration other than the welfare of the corporation,

**NOW THEREFORE** in consideration of the **employee's** employment by **BOLLORE LOGISITCS**, **employee** agrees to the following terms and conditions:

### 1. BASIC TERMS

    a.  During the term of this agreement, employee shall devote his/her time and efforts exclusively to the business and affairs of BOLLORE LOGISITCS and do his/her utmost to promote its interest. He/she shall not, directly or indirectly, own manage, operate, join, control, be employed by, or participate in the ownership, management, operation, or control of, or be connected in any manner with, any business which is competitive to the businesses selling to or doing business with BOLLORE LOGISITCS or it's subsidiaries or any affiliated company.

    b.  The employee may not profit at the expense of BOLLORE LOGISITCS or act in conflict with its rights and interests.

    c.  The employee may not for personal gain divert himself the opportunities which in equity and fairness belong to BOLLORE LOGISITCS.

    d.  The employee must, of course, act honestly and in good faith. He/She must not usurp a corporate opportunity or authorize some corporate transaction which conflicts with the corporation's rights.

    e.  During the course of his/her employment with BOLLORE LOGISITCS, the employee must not use corporate personnel, facilities, or funds for his/her own business; must not disclose secrets of

-1-



BOLLORE LOGISITCS to others, lure away corporate business or personnel, or receive, unknown to his/her corporation, commissions on corporate transactions.

f.   Employee understands and agrees that it is the policy of BOLLORE LOGISITCS to prohibit participation in the payment, solicitation, or receipt of any rebate, directly or indirectly, which is unlawful under the provisions of the Shipping Act of 1984, as amended.

## 2.  ACKNOWLEDGMENT THAT CERTAIN PAPERS ARE SECRET

Certain papers, lists, and documents that relate to the activity of **BOLLORE LOGISITCS** are secret, confidential, unique, and valuable.  The following items are confidential:

a.   Customer lists, call lists, and other confidential customer data;
b.   Memoranda, notes, records, correspondence, and other confidential technical data;
c.   Rates and tariffs;
d.   Confidential sales, research, historical and development data;
e.   Personal employee data, including, but not limited to, salary or wage information; salary or wage increases; bonuses;
f.   Any other document of or pertaining to **BOLLORE LOGISITCS** that contains information not generally and lawfully known by the public.

## 3.  AGREEMENT NOT TO DISCLOSE INFORMATION

Employee will not disclose to anyone, other than BOLLORE LOGISITCS's officers, agents, or authorized employees, unless otherwise directed in writing by BOLLORE LOGISITCS's managers, any items listed in paragraph 2, or any of BOLLORE LOGISITCS's other confidential information or secrets, developed either before or after the date of this agreement.

## 4.  INFORMATION DEVELOPED BY EMPLOYEE

The restrictions contained in the agreement include confidential information developed while employed at BOLLORE LOGISITCS.  These restrictions are waived for any invention developed by an employee on his/her own time without using BOLLORE LOGISITCS's resources.

## 5.  AGREEMENT BINDING AFTER EMPLOYMENT ENDS

This agreement shall not terminate upon termination of the employee's employment.  Its terms and conditions shall be binding upon employee for 12 months following the termination of the employee's employment, regardless of the reason for such termination.

## 6. RETURN OF SECRET AND CONFIDENTIAL MATERIAL UPON TERMINATION OF  EMPLOYMENT

Upon termination of employee's employment for any reason (or at any other time, as requested), employee at once will return to **BOLLORE LOGISITCS** all of **BOLLORE LOGISITCS 's** secret and confidential material that is in the employee's possession or control.

## 7.  AGREEMENT TO BENEFIT EMPLOYER'S SUCCESSORS, ASSIGNS, AFFILIATES, AND SUBSIDIARIES.

This agreement shall inure to the benefit of employer and employer's subsidiaries, affiliates, successors, and assigns.

## 8. GOVERNING LAW AND VENUE

-2-



This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of New York and may be enforced in any court of competent jurisdiction.

## 9.  ARBITRATION

Except as otherwise provided in this Agreement, any controversy or claim arising out of Employee's employment with **BOLLORE LOGISITCS** or the termination thereof, including without limitation any claim related to this Agreement or the breach thereof, shall be resolved by binding arbitration in accordance with the rules then in effect of the American Arbitration Association, at the office of the American Arbitration Association nearest to where the Employee performed the Employee's principal duties for **BOLLORE LOGISITCS**.  Nothing in this paragraph shall prevent the parties from seeking injunctive relief from the courts pending arbitration.  Each party shall be permitted to engage in arbitral discovery in the form of document production, information requests, interrogatories, depositions and subpoenas.  The parties shall share equally the fee of the arbitration panel.

To the extent that a arbitrator or court shall find that any dispute between the parties, including any claim made under or relating to this Agreement, is not subject to arbitration, such claim shall be decided by the courts of the State and the County, in which this agreement was executed, in a proceeding held before a Judge of the Trial Court of the State and County in which this agreement was executed or in the United States District Court in and for the District Court covering the County in which this agreement was executed.  Any trial of such a claim shall be heard by the Judge of such Court, sitting without a jury at a bench trial, to ensure more rapid adjudication of that claim and application of existing law.

## 10. ATTORNEYS' FEES

If any party to this Agreement breaches any of the Agreement's terms, then that party shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including reasonable attorneys' fees, incurred by that party in enforcing this Agreement.

## 11. SEVERABILITY

In the event that any one or more provisions of this agreement shall be declared to be illegal or unenforceable under any law, rule or regulation of any law, rule or regulation of any government having jurisdiction over the Parties hereto, such illegality or unenforceability of the other provisions hereof, which shall remain in full force and effect.

## 12. ENTIRE AGREEMENT; MODIFICATION, AND WAIVER

This agreement sets forth the entire agreement and understanding between the Parties and may not be changed, altered, modified or amended in any respect without a written instrument to that effect, signed by the Parties hereto, or by a court or arbitrator to the extent necessary to be fully enforceable.  Failure of a Party to enforce one or more of the provisions of the agreement or exercise any option or other rights hereunder or to require at any time performance of any of the obligations hereof shall not be construed to be a waiver of such provisions by such Party nor in any way to affect the validity of the agreement or such Party's right thereafter to enforce each and every provision of this agreement, nor to preclude such Party from taking any other action at any time which it would legally be entitled to take.

## 13. LEGAL RIGHTS



The agreement can be enforced by the Employee, the Employer and by Employer's subsidiaries, affiliates, successors and assigns.

### 14. COMPLIANCE WITH THE LAW

It is not the intention of **BOLLORE LOGISITCS** to prevent employee from applying the general knowledge and skill he/she may have acquired while employed by **BOLLORE LOGISITCS** which, of course, he/she may exercise freely. Protection of the company's secrets and confidential information is the primary concern.  As a business organization also processing confidential data and secrets, the cooperation of the employee will be requested and appreciated.

### 15. COMMUNICATIONS

All notices, requests, demands and other communications under this agreement shall be in writing and (unless otherwise specifically provided for herein) shall be deemed to have been given at the time when mailed, by registered or certified mail, postage prepaid, or when telexed or cabled (with confirmation by such mail), addressed to the respective parties hereto at the following address or such changed address as such parties may have fixed by notice:

To the **employee** at his/her home address in the records of the company, last given to the company by the **employee**, or to:



To:     **BOLLORE LOGISITCS**  at:

150-10 132nd Avenue, Jamaica, NY  11434

provided, however, that any notice of change of address shall be effective only upon receipt.

**IN WITNESS THEREOF**, the Parties hereto have executed this agreement the day and year first written above.

BOLLORE LOGISITCS

**Employer Representative:**     _____
                                Signature

**Employer Representative:**     _____
                                Print Name / Title

**Employee:**                   _____
                                Signature

-4-

Filing # 150648096 E-Filed 06/01/2022 01:23:14 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-007395-CA-01
SECTION: CA22
JUDGE: Beatrice Butchko

**JANE DOE**

Plaintiff(s)

vs.

**BOLLORE LOGISTICS USA, INC. et al**

Defendant(s)

_____/

**<u>AGREED ORDER EXTENDING THE DEADLINE FOR DEFENDANT BOLLORE
LOGISTICS USA, INC. TO RESPOND TO PLAINTIFF'S COMPLAINT</u>**

   This CAUSE came before the Court upon the Parties' Agreed Order Extending the

Deadline for Defendant Bollore Logistics USA, Inc. to Respond to Plaintiff's Complaint in the

above-captioned matter. Having reviewed the court file and being otherwise fully advised in the

premises, it is hereby:

   **ORDERED AND ADJUDGED** that Defendant Bollore Logistics USA, Inc. shall

have up to and including July 15, 2022 to respond to Plaintiff's Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>1st day of June,
2022</u>.

2022-007395-CA-01 06-01-2022 1:10 PM

2022-007395-CA-01 06-01-2022 1:10 PM
Hon. Beatrice Butchko

**CIRCUIT COURT JUDGE**
Electronically Signed

Case No: 2022-007395-CA-01                   Page 1 of 2

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Brandon Ulysees Campbell, brandon.campbell@jacksonlewis.com
Brandon Ulysees Campbell, illeana.collazo@jacksonlewis.com
Brandon Ulysees Campbell, miamidocketing@jacksonlewis.com
H. Clay Roberts, roberts@robertspa.com
H. Clay Roberts, gloria@robertspa.com
H. Clay Roberts, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, basnuevo@robertspa.com
Javier Alejandro Basnuevo Valdivia, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, keren@robertspa.com
Pedro Jaime Torres-Diaz, pedro.torres-diaz@jacksonlewis.com
Pedro Jaime Torres-Diaz, debbie.vega@jacksonlewis.com
Pedro Jaime Torres-Diaz, miamidocketing@jacksonlewis.com


**Physically Served:**

Filing # 149968157 E-Filed 05/19/2022 06:17:19 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-007395-CA-01
SECTION: CA22
JUDGE: Beatrice Butchko

**JANE DOE**

Plaintiff(s)

vs.

**BOLLORE LOGISTICS USA, INC. et al**

Defendant(s)

_____/

### AGREED ORDER EXTENDING THE DEADLINE FOR DEFENDANT BOLLORE LOGISTICS USA, INC. TO RESPOND TO PLAINTIFF'S COMPLAINT

      This CAUSE came before the Court upon the Parties' Agreed Order Extending the Deadline for Defendant Bollore Logistics USA, Inc. to Respond to Plaintiff's Complaint in the above-captioned matter. Having reviewed the court file and being otherwise fully advised in the premises, it is hereby:

      **ORDERED AND ADJUDGED** that Defendant Bollore Logistics USA, Inc. shall have up to and including June 6, 2022 to respond to Plaintiff's Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 19th day of May, 2022.

2022-007395-CA-01 05-19-2022 6:04 PM
Hon. Beatrice Butchko

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Brandon Ulysees Campbell, brandon.campbell@jacksonlewis.com
Brandon Ulysees Campbell, illeana.collazo@jacksonlewis.com
Brandon Ulysees Campbell, miamidocketing@jacksonlewis.com
H. Clay Roberts, roberts@robertspa.com
H. Clay Roberts, gloria@robertspa.com
H. Clay Roberts, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, basnuevo@robertspa.com
Javier Alejandro Basnuevo Valdivia, jennifer@robertspa.com
Javier Alejandro Basnuevo Valdivia, keren@robertspa.com
Pedro Jaime Torres-Diaz, pedro.torres-diaz@jacksonlewis.com
Pedro Jaime Torres-Diaz, debbie.vega@jacksonlewis.com
Pedro Jaime Torres-Diaz, miamidocketing@jacksonlewis.com

**Physically Served:**

Filing # 148328438 E-Filed 04/25/2022 03:16:12 PM

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-007395-CA-01

JANE DOE,

    Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a foreign corporation for profit; ADONIS FERNANDEZ, an individual

    Defendants.

_____/

DATE 5/3/22 TIME 2:00

INITIALS: _____ ID #:

#260

## **SUMMONS**

STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons, a copy of the Complaint or Petition,

in the above styled cause upon the Defendant:

    **Please Serve:**    **BOLLORE LOGISTICS USA, INC., a foreign corporation for profit**

    **By Serving:**    **NRAI SERVICES, INC., Registered Agent**
        **1200 South Pine Island Road**
        **Plantation, FL 33324**

    Each Defendant is required to serve written defenses to the Complaint or Petition on

Plaintiffs' attorney:

        **Javier A Basnuevo, Esq.**
        **ROBERTS, P.A.**
        **113 Almeria Avenue**
        **Coral Gables, Fl 33134**
        **Telephone No.: (305)442-1700**

161997

within twenty (20) days after receipt of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED on _____ 4/28/2022 _____, 2022.

HARVEY RUVIN
as Clerk of said Court

By: _____

Deputy Clerk

Filing # 148148501 E-Filed 04/21/2022 03:07:56 PM

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

JANE DOE,

     Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a foreign corporation for profit; ADONIS FERNANDEZ, an individual

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COMES NOW, Plaintiff, JANE DOE, by and through her undersigned attorneys, and sues the Defendants, BOLLORE LOGISTICS USA, INC., a foreign corporation for profit, and ADONIS FERNANDEZ, and individual.

## INTRODUCTION

The crux of this case is that a BOLLORE manager, ADONIS FERNANDEZ terrorized the female employees at BOLLORE's Miami facility. As BOLLORE's Miami hub manager, FERNANDEZ forced them to touch his unclothed genitals and perform sexual acts while on BOLLORE's property during work hours. FERNANDEZ used the authority given to him by BOLLORE to advance the careers of those women who welcomed his sexual advances, and to punish those women who resisted him. Although, BOLLORE learned in February 2020 that FERNANDEZ was sexually harassing women at its Miami facility, BOLLORE did nothing to curtail this heinous conduct. Instead, BOLLORE failed to meaningfully investigate or take any

1

corrective actions, which empowered FERNANDEZ to continue to rape and abuse BOLLORE's employees.

In early 2021, FERNANDEZ turned his eye to the Plaintiff. He repeatedly summoned her to his office at BOLLORE's Miami facility during work hours, where he repeatedly sexually assaulted her. FERNANDEZ threatened Plaintiff that she would lose her job if she brought these acts to light. When she did report his abuses to BOLLORE, the Company informed her abuser of her complaints, did nothing to separate her from FERNANDEZ, and delayed taking any corrective action. After a month of inaction, Plaintiff was left with no choice but to resign her employment. She brings this action against BOLLORE for workplace harassment, constructive discharge, retaliation, negligent supervision, and negligent retention.  She also brings claims against FERNANDEZ personally for sexual battery and assault. The allegations are:

## JURISDICTION, VENUE, AND THE PARTIES

1.      This is an action for damages in excess of $30,000.00 exclusive of interest and costs.

2.      The Plaintiff, JANE DOE, is a resident of Miami-Dade County, Florida and is sui juris. She files this Complaint using a pseudonym because this case involves matters that are highly sensitive and of a personal nature and identification may expose the Plaintiff to a greater risk of harassment and physical violence. Along with this Complaint, Plaintiff files a Motion to Proceed Pseudonymously.

3.      The Defendant, BOLLORE LOGISTICS USA, INC., is a foreign corporation for profit authorized to and doing business in Miami, Florida.

4.      The Defendant, ADONIS FERNANDEZ, is a resident of the State of Florida, who worked in Miami, FL in the years 2020 and part of 2021 as the "Hub Manager" of BOLLORE's Miami facility.

5.      Venue is proper in the 11th Judicial Circuit of Florida because the acts giving rise to this cause of action occurred in Miami, Fl.

## GENERAL ALLEGATIONS

6.      On or about June 1, 2017, Plaintiff began working for BOLLORE as a picker/packer in the Miami facility.

7.      In 2018, Plaintiff was promoted to warehouse team leader at the Miami facility.

8.      As warehouse team leader at the Miami facility, Plaintiff reported directly to BOLLORE's warehouse supervisors, who in turn reported to the hub manager- FERNANDEZ.

9.      In 2020 and 2021, FERNANDEZ held indirect supervisory authority over the Plaintiff, and held the ability to influence the terms and conditions of Plaintiff's employment as the "Hub Manager" of BOLLORE's Miami facility.

10.      In 2020 and 2021, FERNANDEZ used the supervisory authority granted to him by BOLLORE to coerce subordinate female employees, forcing them to engage in sexual acts with him and then further used the authority granted to him by BOLLORE over the terms and conditions of subordinate female's employment to coerce them into keeping quiet about those sexual assaults.

11.      In 2020 and 2021, FERNANDEZ engaged in sexual acts with subordinate female employees while at BOLLORE's Miami facility.

12.      In 2020 and 2021, FERNANDEZ engaged in sexual acts with subordinate female employees during BOLLORE's business hours.

3

13.     In 2020 and 2021, FERNANDEZ granted preferential treatment in the terms and conditions of employment to the subordinate female employees with whom he engaged in sexual acts including promotions, preferential job duty assignments, and gifts.

14.     FERNANDEZ's sexual abuse of subordinate female employees became common knowledge at BOLLORE's Miami facility in 2020 and 2021.

15.     Additionally, FERNANDEZ' sexual abuse of subordinate female employees was so pervasive that engaging in sexual activity with FERNANDEZ became a term of employment at BOLLORE for some female employees at the Miami facility.

16.     In February 2020, BOLLORE's corporate managers in New York and Miami investigated complaints they had received regarding FERNANDEZ' treatment of female subordinate employees at the Miami facility.

17.     In the 2020 investigations, BOLLORE gained actual knowledge that FERNANDEZ was engaging in inappropriate sexual acts with female employees under his direct and indirect supervision, and that FERNANDEZ sexually harassed the female subordinate employees at BOLLORE's Miami facility.

18.     Despite this knowledge, BOLLORE did not adequately investigate the allegations against the abuse of power by the hub manager of its Miami facility.

19.     Despite this knowledge, BOLLORE did not take corrective action against FERNANDEZ to remedy FERNANDEZ' abuse of power as the hub manager at BOLLORE's Miami facility.

20.     In early 2021, FERNANDEZ summoned the Plaintiff to his office at BOLLORE's Miami facility on several occasions during work hours, when Plaintiff reported to FERNANDEZ' office, FERNANDEZ subjected Plaintiff to unwanted sexual and physical touching.

4

21.     FERNANDEZ' unwanted sexual and physical touching included forcing the Plaintiff to touch his unclothed genitals, forcing the Plaintiff to engage in oral and vaginal sex, and striking the Plaintiff with his open hand when she would not comply with his requests.

22.     FERNANDEZ used the authority granted to him by BOLLORE to threaten and coerce Plaintiff into reporting to his office during working hours to engage in sexual acts, by threatening that he would fire her and cause her economic harm if she did not comply or if she reported his behavior to the authorities.

23.     On or about April 6, 2021, Plaintiff broke down emotionally and physically due to FERNANDEZ' abuse and reported FERNANDEZ' abusive behavior to BOLLORE's corporate human resources department. During interviews with representatives from BOLLORE's corporate human resources department, Plaintiff specifically advised BOLLORE that she was being sexually harassed by FERNANDEZ while she was at work.

24.     BOLLORE failed to take this report seriously. It's actions following the report demonstrate BOLLORE's indifference to the sexual assault claims of its employees.

25.     First, BOLLORE did not separate FERNANDEZ from its Miami facility while it investigated the Plaintiff's complaint.

26.     Second, BOLLORE informed FERNANDEZ of the Plaintiff's complaint.

27.     Third, BOLLORE did not investigate this complaint and issue corrective action in a timely manner.

28.     Instead, after April 6, 2021, the harassment from FERNANDEZ towards the Plaintiff grew worse. FERNANDEZ began berating Plaintiff at work, assigning her to clean bathrooms, and assigning her to perform physically demanding tasks, like moving heavy boxes without assistance, that were not part of her normal job duties.

5

29.     The retaliatory conduct continued until Plaintiff could no longer stand to be at work. On April 23, 2021, she resigned her employment with BOLLORE.

## COUNT I- GENDER DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

30.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

    a.  She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

    b.  More than 180 days have passed since Plaintiff filed her charge of discrimination.

31.     Plaintiff was a woman and as such, she is a member of a protected class.

32.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

33.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

34.     Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

35.     As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62, that a reasonable person in her shoes would be compelled to resign.

36.     In April 2021, BOLLORE constructively discharged the Plaintiff from her employment at BOLLORE.

6

37.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including attorney's fees, costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT II- HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
Plaintiff re-alleges paragraphs 1- 29 and further alleges:

38. Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

    a.  She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

    b.  More than 180 days have passed since Plaintiff filed her charge of discrimination.

39.     Plaintiff was a woman and as such, she is a member of a protected class.

40.     While at work, she was subjected to the acts described in 20, 21, 22, 56, 60, 61, and 62.

41.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

42.     Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

43.     Plaintiff was harassed, as described in paragraphs 20, 21, 22, 56, 60, 61, and 62, at work because she was a woman.

44.     As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62, that a reasonable person in her shoes would be compelled to resign.

45.     Similarly, the harassment was so pervasive that it affected the terms and conditions of Plaintiff's employment.

46.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT III- RETALIATION IN VIOLATION OF THE FLORISA CIVIL RIGHTS ACT
Plaintiff re-alleges paragraphs 1- 29 and further alleges:

47.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

8

    a.   She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

    b.   More than 180 days have passed since Plaintiff filed her charge of discrimination.

48.    Plaintiff was a woman and as such, she is a member of a protected class.

49.    While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

50.    Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

51.    Engaged in a protected activity when she complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

52.    In fact, after Plaintiff complained of discrimination, Bollore informed her abuser of these complaints, failed to separate her abuser at the workplace, and empowered her abuser to reprimand her for asserting her rights. Thereby retaliating against Plaintiff for asserting her rights and engaging in a protected activity.

53.    This retaliation affected the terms and conditions of her employment and constitutes an adverse employment action because Plaintiff was forced to perform physically demanding and punishing labor outside of her regular job duties and the retaliatory treatment was so intolerable that a reasonable person in her situation would be compelled to resign.

54.    As result, BOLLORE constructively terminated Plaintiff's employment in April 2021.

55.    As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has

9

suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

### COUNT IV- ASSAULT

Plaintiff re-alleges paragraphs 1-29 and further alleges:

56.     FERNANDEZ intentionally threatened to harm Plaintiff when he summoned her to his office, when he threatened to strike her with his open hand if she did not comply with his requests when she was in the office, and when he threatened her to keep quiet about the acts he forced her to engage in while in his office at BOLLORE's Miami facility.

57.     At the time he made those threats, FERNANDEZ possessed the apparent ability to carry out each threat.

58.     FERNANDEZ' threats created a fear in the Plaintiff that he would actually carry out those threats.

59.     As a direct and proximate result of FERNANDEZ' wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, FERNANDEZ, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

### COUNT V- SEXUAL BATTERY

Plaintiff re-alleges paragraphs 1-29 and further alleges:

60.     In early 2021, FERNANDEZ inflicted harmful or offensive contact upon the Plaintiff when he forced Plaintiff to engage in sexual acts with him in the BOLLORE Miami facility, during working hours without Plaintiff's consent.

61.     FERNANDEZ coerced Plaintiff to submit by threatening to retaliate against Plaintiff and Plaintiff reasonably believed the FERNANDEZ had the ability to execute that threat.

62.     At the time that he forced Plaintiff to engage in those sexual acts with him, FERENANDEZ intended to cause such harmful and offensive physical contact.

63.     As a direct and proximate result of FERNANDEZ' wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, FERNANDEZ, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

### COUNT VI- VICARIOUS LIABILITY FOR THE ACTS OF FERNANDEZ

Plaintiff re-alleges paragraphs 1-89 and further alleges:

11

64.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while in the course and scope of his employment for BOLLORE because he committed the acts during business hours; at BOLLORE's facility; and while managing BOLLORE's business.

65.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while using the authority and control over the terms and conditions of Plaintiff's employment granted to him by BOLLORE.

66.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he was acting as BOLLORE's actual and apparent agent.

67.     In 2020 and 2021 BOLLORE had a duty to ensure that its agents behaved in a reasonable manner while working for BOLLORE, during working hours, and at BOLLORE's facility.

68.     In 2020 and 2021, BOLLORE breached that duty by:

  a.   Failing to ensure that BOLLORE provided a workplace free from recognized hazards of sexual assault and battery to its employees;

  b.   Failing to ensure BOLLORE's agents behaved in a reasonable manner;

  c.   Permitting FERNANDEZ to commit the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

  d.   Failing to adequately investigate FERNANDEZ when it became aware that FERNANDEZ was engaged in dangerous behavior while at work;

  e.   Failing to take corrective measures when it became aware that FERNANDEZ was engaged in dangerous behavior while at work.

12

69.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

### COUNT VII- NEGLIGENT RETENTION

Plaintiff re-alleges paragraphs 1-95 and further alleges:

70.     Count IV is alleged in the alternative to Count III.

71.     During the course of FERNANDEZ' employment, BOLLORE became aware (or should have become aware) of problems with FERNANDEZ that indicated he was unfit to be the hub manager at the Miami facility.

72.     During the course of FERNANDEZ' employment, BOLLORE became aware (or should have become aware) that FERNANDEZ was predisposed to using his supervisory authority for force the female subordinate employees into sexual contact.

73.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while using the authority and control over the terms and conditions of Plaintiff's employment granted to him by BOLLORE.

13

74.    When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he was able to do so because BOLLORE was responsible to providing him the authority and opportunity to sexually assault the Plaintiff.

75.    In 2020 and 2021 BOLLORE had a duty to ensure that its agents behaved in a reasonable manner while working for BOLLORE, during working hours, and at BOLLORE's facility.

76.    In 2020 and 2021, BOLLORE breached that duty by:

    a.  Permitting FERNANDEZ to commit the acts described in paragraphs 20, 21, 22, 56, 60, 61, and 62.

    b.  Failing to adequately investigate FERNANDEZ when it became aware that FERNANDEZ was engaged in dangerous behavior while at work;

    c.  Failing to implement and enforce policies and procedures to keep the workplace free from sexual assaults;

    d.  Failing to take corrective measures when it became aware that FERNANDEZ was engaged in dangerous behavior while at work.

77.    As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

Dated this 21st day of April, 2022.

Respectfully Submitted,

ROBERTS, P.A.
*Counsel for Plaintiff*
113 Almeria Avenue
Coral Gables, FL 33134
Phone: (305) 442-1700
Fax: (305) 442-2559
Email: Roberts@robertspa.com
        Basnuevo@robertspa.com

By:      s/: Javier A. Basnuevo
         H. CLAY ROBERTS
         Fla. Bar No.: 262307
         JAVIER A. BASNUEVO
         Fla. Bar No.:  100509

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-007395-CA-01

JANE DOE,

     Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a foreign corporation for profit; ADONIS FERNANDEZ, an individual

     Defendants.

_____/

## PLAINTIFF'S MOTION TO AMEND COMPLAINT

COME NOW, the Plaintiff, and requests this Court to enter an Order permitting the Plaintiffs to file her Amended Complaint, and states:

1. Plaintiff, JANE DOE, brings these claims under various state anti-discrimination laws.

2. On November 22, 2022, the EEOC issued a right to sue to the Plaintiff to allow her to allege additional claims under Title VII.

3. Plaintiffs file this motion to amend the complaint and add those claims now permitted under federal law. A proposed Amended Complaint is attached to this Motion.

WHEREFORE, the Plaintiff, respectfully requests this Honorable Court enter an Order granting this motion, and any other relief this Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was filed via the Florida Courts E-Filing Portal/ECF and was sent by E-mail from the Florida Courts' E-Filing Portal system on this 19th day of February, 2023 to: Pedro J. Torres-Diaz, Esq., pedro.torres-diaz@jacksonlewis.com; Brandon U. Campbell, Esq., brandon.campbell@jacksonlewis ; JACKSON LEWIS P.C., One Biscayne Tower, Suite 3500, 2 South Biscayne Boulevard, Miami, Florida 33131.

ROBERTS, P.A.
*Co-Counsel for Plaintiff*
113 Almeria Avenue
Coral Gables, FL 33134
Fax: (305)442-2559
Email: banuevo@robertspa.com

By:   */s/: Javier A Basnuevo*
JAVIER A BASNUEVO
Fla. Bar No.: 100509

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-007395-CA-01

JANE DOE,

     Plaintiff,

vs.

BOLLORE LOGISTICS USA, INC., a foreign corporation for profit; ADONIS FERNANDEZ, an individual

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COMES NOW, Plaintiff, JANE DOE, by and through her undersigned attorneys, and sues the Defendants, BOLLORE LOGISTICS USA, INC., a foreign corporation for profit, and ADONIS FERNANDEZ, and individual.

## INTRODUCTION

The crux of this case is that a BOLLORE manager, ADONIS FERNANDEZ terrorized the female employees at BOLLORE's Miami facility. As BOLLORE's Miami hub manager, FERNANDEZ forced them to touch his unclothed genitals and perform sexual acts while on BOLLORE's property during work hours. FERNANDEZ used the authority given to him by BOLLORE to advance the careers of those women who welcomed his sexual advances, and to punish those women who resisted him. Although, BOLLORE learned in February 2020 that FERNANDEZ was sexually harassing women at its Miami facility, BOLLORE did nothing to curtail this heinous conduct. Instead, BOLLORE failed to meaningfully investigate or take any

1

corrective actions, which empowered FERNANDEZ to continue to rape and abuse BOLLORE's employees.

In early 2021, FERNANDEZ turned his eye to the Plaintiff. He repeatedly summoned her to his office at BOLLORE's Miami facility during work hours, where he repeatedly sexually assaulted her.  FERNANDEZ threatened Plaintiff that she would lose her job if she brought these acts to light. When she did report his abuses to BOLLORE, the Company informed her abuser of her complaints, did nothing to separate her from FERNANDEZ, and delayed taking any corrective action. After a month of inaction, Plaintiff was left with no choice but to resign her employment. She brings this action against BOLLORE for workplace harassment, constructive discharge, retaliation, negligent supervision, and negligent retention.  She also brings claims against FERNANDEZ personally for sexual battery and assault. The allegations are:

## JURISDICTION, VENUE, AND THE PARTIES

1.      This is an action for damages in excess of $30,000.00 exclusive of interest and costs.

2.      The Plaintiff, JANE DOE, is a resident of Miami-Dade County, Florida and is sui juris. She files this Complaint using a pseudonym because this case involves matters that are highly sensitive and of a personal nature and identification may expose the Plaintiff to a greater risk of harassment and physical violence. Along with this Complaint, Plaintiff files a Motion to Proceed Pseudonymously.

3.      The Defendant, BOLLORE LOGISTICS USA, INC., is a foreign corporation for profit authorized to and doing business in Miami, Florida.

4.      The Defendant, ADONIS FERNANDEZ, is a resident of the State of Florida, who worked in Miami, FL in the years 2020 and part of 2021 as the "Hub Manager" of BOLLORE's Miami facility.

5.      Venue is proper in the 11th Judicial Circuit of Florida because the acts giving rise to this cause of action occurred in Miami, Fl.

## GENERAL ALLEGATIONS

6.      On or about June 1, 2017, Plaintiff began working for BOLLORE as a picker/packer in the Miami facility.

7.      In 2018, Plaintiff was promoted to warehouse team leader at the Miami facility.

8.      As warehouse team leader at the Miami facility, Plaintiff reported directly to BOLLORE's warehouse supervisors, who in turn reported to the hub manager- FERNANDEZ.

9.      In 2020 and 2021, FERNANDEZ held indirect supervisory authority over the Plaintiff, and held the ability to influence the terms and conditions of Plaintiff's employment as the "Hub Manager" of BOLLORE's Miami facility.

10.      In 2020 and 2021, FERNANDEZ used the supervisory authority granted to him by BOLLORE to coerce subordinate female employees, forcing them to engage in sexual acts with him and then further used the authority granted to him by BOLLORE over the terms and conditions of subordinate female's employment to coerce them into keeping quiet about those sexual assaults.

11.      In 2020 and 2021, FERNANDEZ engaged in sexual acts with subordinate female employees while at BOLLORE's Miami facility.

12.      In 2020 and 2021, FERNANDEZ engaged in sexual acts with subordinate female employees during BOLLORE's business hours.

13.     In 2020 and 2021, FERNANDEZ granted preferential treatment in the terms and conditions of employment to the subordinate female employees with whom he engaged in sexual acts including promotions, preferential job duty assignments, and gifts.

14.     FERNANDEZ's sexual abuse of subordinate female employees became common knowledge at BOLLORE's Miami facility in 2020 and 2021.

15.     Additionally, FERNANDEZ' sexual abuse of subordinate female employees was so pervasive that engaging in sexual activity with FERNANDEZ became a term of employment at BOLLORE for some female employees at the Miami facility.

16.     In February 2020, BOLLORE's corporate managers in New York and Miami investigated complaints they had received regarding FERNANDEZ' treatment of female subordinate employees at the Miami facility.

17.     In the 2020 investigations, BOLLORE gained actual knowledge that FERNANDEZ was engaging in inappropriate sexual acts with female employees under his direct and indirect supervision, and that FERNANDEZ sexually harassed the female subordinate employees at BOLLORE's Miami facility.

18.     Despite this knowledge, BOLLORE did not adequately investigate the allegations against the abuse of power by the hub manager of its Miami facility.

19.     Despite this knowledge, BOLLORE did not take corrective action against FERNANDEZ to remedy FERNANDEZ' abuse of power as the hub manager at BOLLORE's Miami facility.

20.     In early 2021, FERNANDEZ summoned the Plaintiff to his office at BOLLORE's Miami facility on several occasions during work hours, when Plaintiff reported to FERNANDEZ' office, FERNANDEZ subjected Plaintiff to unwanted sexual and physical touching.

21.     FERNANDEZ' unwanted sexual and physical touching included forcing the Plaintiff to touch his unclothed genitals, forcing the Plaintiff to engage in oral and vaginal sex, and striking the Plaintiff with his open hand when she would not comply with his requests.

22.     FERNANDEZ used the authority granted to him by BOLLORE to threaten and coerce Plaintiff into reporting to his office during working hours to engage in sexual acts, by threatening that he would fire her and cause her economic harm if she did not comply or if she reported his behavior to the authorities.

23.     On or about April 6, 2021, Plaintiff broke down emotionally and physically due to FERNANDEZ' abuse and reported FERNANDEZ' abusive behavior to BOLLORE's corporate human resources department. During interviews with representatives from BOLLORE's corporate human resources department, Plaintiff specifically advised BOLLORE that she was being sexually harassed by FERNANDEZ while she was at work.

24.     BOLLORE failed to take this report seriously.   It's actions following the report demonstrate BOLLORE's indifference to the sexual assault claims of its employees.

25.     First, BOLLORE did not separate FERNANDEZ from its Miami facility while it investigated the Plaintiff's complaint.

26.     Second, BOLLORE informed FERNANDEZ of the Plaintiff's complaint.

27.     Third, BOLLORE did not investigate this complaint and issue corrective action in a timely manner.

28.     Instead, after April 6, 2021, the harassment from FERNANDEZ towards the Plaintiff grew worse. FERNANDEZ began berating Plaintff at work, assigning her to clean bathrooms, and assigning her to perform physically demanding tasks, like moving heavy boxes without assistance, that were not part of her normal job duties.

29.     The retaliatory conduct continued until Plaintiff could no longer stand to be at work. On April 23, 2021, she resigned her employment with BOLLORE.

**COUNT I- GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

30.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

        a.   She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

        b.   She obtained a notice of right to sue from the EEOC.

31.     Plaintiff was a woman and as such, she is a member of a protected class.

32.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

33.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

34.     Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

35.     As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88, that a reasonable person in her shoes would be compelled to resign.

36.     In April 2021, BOLLORE constructively discharged the Plaintiff from her employment at BOLLORE.

37.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including attorney's fees, costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT II- HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

38.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

a. She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

b. She obtained a notice of right to sue from the EEOC.

39.     Plaintiff was a woman and as such, she is a member of a protected class.

40.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

41.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

42.     Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

43.     Plaintiff was harassed, as described in paragraphs 20, 21, 22, 82, 86, 87, and 88, at work because she was a woman.

44.     As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88, that a reasonable person in her shoes would be compelled to resign.

45.     Similarly, the harassment was so pervasive that it affected the terms and conditions of Plaintiff's employment.

46.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT III- RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

47.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

a.     She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

8

      b.   She obtained a notice of right to sue from the EEOC.

48.     Plaintiff was a woman and as such, she is a member of a protected class.

49.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

50.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

51.     Engaged in a protected activity when she complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

52.     In fact, after Plaintiff complained of discrimination, Bollore informed her abuser of these complaints, failed to separate her abuser at the workplace, and empowered her abuser to reprimand her for asserting her rights. Thereby retaliating against Plaintiff for asserting her rights and engaging in a protected activity.

53.     This retaliation affected the terms and conditions of her employment and constitutes an adverse employment action because Plaintiff was forced to perform physically demanding and punishing labor outside of her regular job duties and the retaliatory treatment was so intolerable that a reasonable person in her situation would be compelled to resign.

54.     As result, BOLLORE constructively terminated Plaintiff's employment in April 2021.

55.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of

ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

### COUNT IV- GENDER DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
Plaintiff re-alleges paragraphs 1- 50 and further alleges:

56.       Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

    a.   She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

    b.   More than 180 days have passed since Plaintiff filed her charge of discrimination.

57.       Plaintiff was a woman and as such, she is a member of a protected class.

58.       While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

59.       Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

60.       Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

61.       As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88, that a reasonable person in her shoes would be compelled to resign.

62.     In April 2021, BOLLORE constructively discharged the Plaintiff from her employment at BOLLORE.

63.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including attorney's fees, costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT V- HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

64. Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

   a. She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

   b. More than 180 days have passed since Plaintiff filed her charge of discrimination.

65.     Plaintiff was a woman and as such, she is a member of a protected class.

66.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

67.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

68.     Plaintiff complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

69.     Plaintiff was harassed, as described in paragraphs 20, 21, 22, 82, 86, 87, and 88, at work because she was a woman.

70.     As a result of Plaintiff's membership in a protected class she suffered an adverse employment action because her workplace was so intolerable, because of the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88, that a reasonable person in her shoes would be compelled to resign.

71.     Similarly, the harassment was so pervasive that it affected the terms and conditions of Plaintiff's employment.

72.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT VI- RETALIATION IN VIOLATION OF THE FLORISA CIVIL RIGHTS ACT

Plaintiff re-alleges paragraphs 1- 29 and further alleges:

73.     Plaintiff has complied with all conditions precedent to filing a workplace discrimination claim because:

  a.  She presented charges of discriminations to the EEOC, FCHR, and the MDCHR within 180 days of BOLLORE's discriminatory acts; and

  b.  More than 180 days have passed since Plaintiff filed her charge of discrimination.

74.     Plaintiff was a woman and as such, she is a member of a protected class.

75.     While at work, she was subjected to the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

76.     Other workers who were not in Plaintiff's protected class were not subjected to the treatment described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

77.     Engaged in a protected activity when she complained to BOLLORE of this treatment, but BOLLORE did not act to stop the discriminatory treatment.

78.     In fact, after Plaintiff complained of discrimination, Bollore informed her abuser of these complaints, failed to separate her abuser at the workplace, and empowered her abuser to reprimand her for asserting her rights. Thereby retaliating against Plaintiff for asserting her rights and engaging in a protected activity.

79.     This retaliation affected the terms and conditions of her employment and constitutes an adverse employment action because Plaintiff was forced to perform physically demanding and punishing labor outside of her regular job duties and the retaliatory treatment was so intolerable that a reasonable person in her situation would be compelled to resign.

13

80.     As result, BOLLORE constructively terminated Plaintiff's employment in April 2021.

81.     As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for compensatory and punitive damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT VII- ASSAULT

Plaintiff re-alleges paragraphs 1-29 and further alleges:

82.     FERNANDEZ intentionally threatened to harm Plaintiff when he summoned her to his office, when he threatened to strike her with his open hand if she did not comply with his requests when she was in the office, and when he threatened her to keep quiet about the acts he forced her to engage in while in his office at BOLLORE's Miami facility.

83.     At the time he made those threats, FERNANDEZ possessed the apparent ability to carry out each threat.

84.     FERNANDEZ' threats created a fear in the Plaintiff that he would actually carry out those threats.

85.     As a direct and proximate result of FERNANDEZ' wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has

14

suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, FERNANDEZ, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT VIII- SEXUAL BATTERY

Plaintiff re-alleges paragraphs 1-29 and further alleges:

86.     In early 2021, FERNANDEZ inflicted harmful or offensive contact upon the Plaintiff when he forced Plaintiff to engage in sexual acts with him in the BOLLORE Miami facility, during working hours without Plaintiff's consent.

87.     FERNANDEZ coerced Plaintiff to submit by threatening to retaliate against Plaintiff and Plaintiff reasonably believed the FERNANDEZ had the ability to execute that threat.

88.     At the time that he forced Plaintiff to engage in those sexual acts with him, FERENANDEZ intended to cause such harmful and offensive physical contact.

89.     As a direct and proximate result of FERNANDEZ' wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, FERNANDEZ, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT IX- VICARIOUS LIABILITY FOR THE ACTS OF FERNANDEZ

Plaintiff re-alleges paragraphs 1-89 and further alleges:

90.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while in the course and scope of his employment for BOLLORE because he committed the acts during business hours; at BOLLORE's facility; and while managing BOLLORE's business.

91.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while using the authority and control over the terms and conditions of Plaintiff's employment granted to him by BOLLORE.

92.     When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he was acting as BOLLORE's actual and apparent agent.

93.     In 2020 and 2021 BOLLORE had a duty to ensure that its agents behaved in a reasonable manner while working for BOLLORE, during working hours, and at BOLLORE's facility.

94.     In 2020 and 2021, BOLLORE breached that duty by:

a.   Failing to ensure that BOLLORE provided a workplace free from recognized hazards of sexual assault and battery to its employees;

b.   Failing to ensure BOLLORE's agents behaved in a reasonable manner;

c.   Permitting FERNANDEZ to commit the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

d. Failing to adequately investigate FERNANDEZ when it became aware that FERNANDEZ was engaged in dangerous behavior while at work;

e. Failing to take corrective measures when it became aware that FERNANDEZ was engaged in dangerous behavior while at work.

95. As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of ability of earn money. The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

## COUNT X- NEGLIGENT RETENTION

Plaintiff re-alleges paragraphs 1-95 and further alleges:

96. Count IV is alleged in the alternative to Count III.

97. During the course of FERNANDEZ' employment, BOLLORE became aware (or should have become aware) of problems with FERNANDEZ that indicated he was unfit to be the hub manager at the Miami facility.

98. During the course of FERNANDEZ' employment, BOLLORE became aware (or should have become aware) that FERNANDEZ was predisposed to using his supervisory authority for force the female subordinate employees into sexual contact.

99. When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he did so while using the authority and control over the terms and conditions of Plaintiff's employment granted to him by BOLLORE.

100. When FERNANDEZ engaged in the conduct described in the preceding paragraphs, he was able to do so because BOLLORE was responsible to providing him the authority and opportunity to sexually assault the Plaintiff.

101. In 2020 and 2021 BOLLORE had a duty to ensure that its agents behaved in a reasonable manner while working for BOLLORE, during working hours, and at BOLLORE's facility.

102. In 2020 and 2021, BOLLORE breached that duty by:

    a. Permitting FERNANDEZ to commit the acts described in paragraphs 20, 21, 22, 82, 86, 87, and 88.

    b. Failing to adequately investigate FERNANDEZ when it became aware that FERNANDEZ was engaged in dangerous behavior while at work;

    c. Failing to implement and enforce policies and procedures to keep the workplace free from sexual assaults;

    d. Failing to take corrective measures when it became aware that FERNANDEZ was engaged in dangerous behavior while at work.

103. As a direct and proximate result of BOLLORE's wrongful conduct Plaintiff has suffered lost wages, past and future, loss of other economic benefits of employment, and has suffered embarrassment, humiliation, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of

ability of earn money.  The losses are permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment for damages against Defendant, BOLLORE, including costs and interest, and furthermore demands trial by jury of all issues so triable as of right.

Dated this 16th day of February, 2023.

Respectfully Submitted,

ROBERTS, P.A.
*Counsel for Plaintiff*
Offices at Grand Bay Plaza
2665 South Bayshore Drive, Suite 300
Coconut Grove, FL 33133
Phone:  305-442-1700
Fax: (305)442-2559
Email:  Roberts@robertspa.com
            Basnuevo@robertspa.com

By:     _s/: Javier A. Basnuevo_____
            H. CLAY ROBERTS
            Fla. Bar No.:  262307
            JAVIER A. BASNUEVO
            Fla. Bar No.:   100509