UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-cv-21208-RKA/LMR

JANE DOE,

    Plaintiff,

v.

BOLLORE LOGISTICS USA, INC., a
Foreign corporation for profit; ADONIS
FERNANDEZ, an individual,

    Defendants.
_____/

**DEFENDANT BOLLORE LOGISTICS USA, INC.'S MOTION TO COMPEL
ARBITRATION REGARDING THE AMENDED COMPLAINT**

Defendant, Bollore Logistics USA, Inc. ("Defendant"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") moves to compel Plaintiff to submit the claims stated in her Amended Complaint to arbitration, and states in support:

**INTRODUCTION**

Plaintiff, Jane Doe ("Plaintiff"),[1] filed this action against Defendant alleging gender discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") (Counts I-III of the Amended Complaint) and the Florida Civil Rights Act, Fla. Stat. § 760. *et seq*. ("FCRA") (Counts IV-VI), assault and sexual battery (Counts VII – VIII) against Adonis Fernandez ("Fernandez")

---

[1] Counsel for Plaintiff has stipulated that Plaintiff is a party to the Agreement (as the term is defined below) supporting the instant Motion, and that Plaintiff executed the agreement. Consequently, the authenticity of Plaintiff's signature is not at issue. Notwithstanding, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1323-1324 (S.D. Fla. 2016).

individually,[2] that Bollore is vicariously liable for Fernandez's alleged acts of assault and sexual battery (Count IX), and negligent retention (Count X).

Although Defendant denies Plaintiff's claims in their entirety, this matter should be stayed, and Plaintiff should be compelled to arbitrate her claims. As a term and condition of her employment, Plaintiff signed a valid, mutually binding nondisclosure agreement that contained an arbitration provision requiring her to arbitrate claims that arose out of her employment. Her continued refusal to do so lacks any foundation in law or fact.

While Defendant acknowledges that the nondisclosure agreement invokes New York law, Plaintiff is yet required to arbitrate her claims under the Federal Arbitration Act (the "FAA"). Indeed, New York law is preempted by the FAA. Consequently, New York's prohibition against arbitrating employment discrimination and sexual harassment claims does not apply.

Additionally, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("the FAA Amendment") does not prohibit the arbitration of Plaintiff's sexual harassment and sexual battery claims because Plaintiff's claims accrued prior to the date the FAA Amendment was enacted.

**BACKGROUND**

Defendant is a national logistics and distribution company that transports goods, and services the supply chain needs of its customers throughout the United States. *See* Declaration of Claire Roussie ("Roussie Decl."), ¶ 3, attached hereto as Exhibit "A." On June 1, 2017, Plaintiff began working with Defendant as a Picker/Packer. Ex. A at ¶ 4. On that day, Plaintiff signed the "Employee's Agreement Not to Disclose Corporate Confidential Information" (hereinafter the "Agreement"). *See* Exhibit "1" to Roussie Decl., the Agreement; *see also* Ex. A at ¶ 5.

---

[2]   Defendant notes that Plaintiff has not represented to the Court that she has effectuated service upon Defendant Fernandez. Further, the undersigned counsel do not represent him.

Paragraph 9 of the Agreement contains a section entitled "Arbitration." Ex. 1 to Roussie Decl. at p. 3, § 9 (hereinafter "Arbitration provision"). The Arbitration provision provides that "any controversy or claim arising out of Employee's employment with BOLLORE LOGISTICS or the termination thereof, including without limitation any claim related to this Agreement or the breach thereof, shall be resolved by binding arbitration in accordance with the rules then in effect of the American Arbitration Association [("AAA")]." Ex. 1 to Roussie Decl. at p. 3, § 9; Roussie Decl., ¶ 5. Plaintiff therefore agreed to arbitration as a condition of her employment. Ex. 1 to Roussie Decl. at p. 1, 3, § 9.

Despite Plaintiff's agreement to submit to arbitration "any controversy or claim arising out of Employee's employment with BOLLORE LOGISTICS or the termination thereof," Plaintiff filed her Amended Complaint alleging 10 causes of action against Defendant. *See* Am. Compl., Counts I through X. Plaintiff asserted claims for gender discrimination, hostile work environment, and retaliation in violation of Title VII and the FCRA, Florida common law claims of assault and sexual battery against Fernandez individually, that Defendant is vicariously liable for Fernandez's assault and sexual battery, as well as negligent retention.[3] *Id*. All claims arise out of Plaintiff's employment with Defendant. *See* Am. Compl., ¶¶ 6-29, entitled "General Allegations." Given that these claims fall squarely within the purview of the Arbitration provision, and for the reasons set forth in greater detail below, the Court should stay these proceedings and compel Plaintiff to arbitrate her claims.

---

[3]  The Arbitration provision also covers Plaintiff's individual claims brought against Defendant Fernandez. *See Cicchetti v. Davis Selected Advisors,* Case No.: 02 Civ. 10150 (RMB), 2003 U.S. Dist. LEXIS 20747, *5-8 (S.D.N.Y. Nov. 17, 2003) (holding that an individual supervisor was entitled to arbitrate claims brought by a former employee because the employee's claims against the supervisor were "inextricably" intertwined with the former employee's claims against the employer).

CASE NO. 1:23-cv-21208-RKA/LMR

**I.   The Federal Arbitration Act Requires the Court to Enforce the Parties' Valid Arbitration Provision**

Paragraph 8 of the Agreement requires it to be "construed and enforced in accordance with and governed by the laws of the State of New York." Ex. 1 to Roussie Decl. at pp. 2-3, § 8. Further, "Florida courts are required to enforce choice of law provisions in contracts unless the law of the foreign state contravenes the strong public policy of Florida or is unjust or unreasonable." *See Default Proof Credit Card Sys. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008); *see also Barnes v. StubHub, Inc.*, Case No.: 19-80475-CIV-ROSENBERG/REINHART, 2019 U.S. Dist. LEXIS 172846, *7 (S.D. Fla. Oct. 2, 2019) (same proposition). Despite the applicability of New York law, the FAA controls Plaintiff's obligation to arbitrate her claims. Indeed, the United States Supreme Court has found that the FAA "preempt[s] any state rule discriminating on its face against arbitration…." *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (citing *AT&T Mobility Corp. v. Concepcion*, 563 U.S. 333, 341 (2011)).

The FAA, 9 U.S.C. §§ 1, *et seq.*, evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983)); *see also Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration"). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Consequently, courts "rigorously enforce" arbitration agreements. *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004), *cert. denied*, 544 U.S. 1061 (2005).

Where a party is "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration," that party "may petition any United States District Court

4

. . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If the court finds that a valid arbitration agreement exists and applies to the dispute at hand, and that one party has failed or refused to arbitrate the dispute, the court must compel arbitration. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974) (a court should "order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate").

Further, the FAA and United States Supreme Court support the enforcement of arbitration agreements. The FAA was enacted by Congress to "reverse the longstanding judicial hostility toward arbitration." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-627 (1985)). The FAA establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion,* 563 U.S. at 346 (*quoting Moses H. Cone,* 460 U.S. at 24); *see also Stolt-Nielsen S.A. v. Animal Feeds Intern. Corp.,* 559 U.S. 662, 664 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control") (citations omitted).

Under the FAA, arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Moreover, because arbitration is a highly favored means of resolving disputes, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Indeed, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to

their terms." *Concepcion*, 563 U.S. at 344 (citation omitted).

Guided by the FAA, the United States Supreme Court has repeatedly held that arbitration agreements are to be read liberally to effectuate their purpose. *Moses H. Cone*, 460 U.S. at 24-25; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000). Indeed, the FAA requires courts to "rigorously enforce" arbitration agreements. *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Mitsubishi Motors Corp.*, 473 U.S. at 626. A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

The FAA also applies because of the interstate commerce implications in this matter. Pursuant to the FAA, a written arbitration agreement to settle disputes related to "a transaction involving commerce" or a controversy "arising out of such contract or transaction" is "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Picard,* 564 F.3d at 1252. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'– words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003).

The FAA applies because Defendant's overall employment practices are related to its distribution of goods, which affects interstate commerce. *See Lipscomb v. Payroll Mgmt.,* Case No.: Case No. 3:12cv88-MCR/CJK. 2012 U.S. Dist. LEXIS 110682, *5 (N.D. Fla. June 13, 2012) ("although the plaintiff's individual work and contacts may have been limited to Florida, PMI's overall employment practices constitute activity involving commerce. Thus, the FAA's interstate

commerce requirement is satisfied."); *see also Petrie v. Clark Moving & Storage, Inc.*, 09-CV-06495, 2010 U.S. Dist. LEXIS 48460, *9 (W.D.N.Y. May 17, 2010) (enforcing the FAA after finding that a local storage contract between a New York company and New York residents involved interstate commerce because the company conducted operations in 3 different states). Here, Defendant is a national logistics and distribution company that transports goods throughout the United States. *See* Ex. A. ¶ 3. Plaintiff signed the Agreement with Defendant as a term and condition of her employment. *See* Ex. 1 to Roussie Decl. at p. 1, 3, § 9. As such, the Court should compel Plaintiff to arbitrate her claims pursuant to the FAA.

**II.     The Agreement Requires Plaintiff to Arbitrate Her Claims.**

In determining whether to compel arbitration pursuant to the FAA, courts consider (1) whether there exists a valid agreement to arbitrate and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *See, e.g., Levin v. GFI Sec., L.L.C.*, 100773/2005, 2005 N.Y. Misc. LEXIS 8533, at *9 (N.Y. Sup. Nov. 18, 2005) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).[4] Additionally, if federal statutory claims are asserted, the court must consider whether those claims are arbitrable. *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that . . . [it] should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25 (emphasis added).

---

[4]     Under Florida law, the Court is required to review whether Defendant waived the right to arbitration in evaluating whether to compel arbitration. *Raymond James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). Although federal and New York law applies, Defendant has not waived the right to arbitration under Florida law either. During the state court proceedings, Defendant entered into agreed extensions of time to respond to the operative complaint. Otherwise, Defendant's sole action in this matter has been to pursue arbitration.

Upon finding that a dispute is subject to a binding arbitration agreement, the FAA *mandates* courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

A. The Parties Have A Valid Agreement to Arbitrate.

Generally, ordinary state law principles governing the formation of contracts determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). As discussed above, Paragraph 8 of the Agreement requires it to be "construed and enforced in accordance with and governed by the laws of the State of New York." Ex. 1 to Roussie Decl. at pp. 2-3, § 8. Consequently, we analyze the validity of the Agreement under New York law.

"A valid arbitration agreement requires a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement." *Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 387 (S.D.N.Y. Nov. 28, 2017) (internal citation omitted). "By signing a written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement." *Id* (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). "[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." *Gold*, 365 F.3d at 149 (internal citations and quotations omitted). "As is the case with any contract, the intention of the parties is controlling, but under the FAA those intentions are generously construed as to issues of arbitrability.'" *Singer v. Jefferies & Co.*, 78 N.Y.2d 76, 82 (1991) (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 626)).

Here, Plaintiff accepted Defendant's offer to submit her claims to arbitration as a condition of her employment. *See* Ex. 1 to Roussie Decl. at p. 1, 3, § 9. As demonstrated in Exhibit "1," Plaintiff executed the Agreement on June 1, 2017. Ex. 1 to Roussie Decl. at p. 3, § 9; Roussie Decl., ¶ 5. Further, there is no evidence of fraud or any other wrongful act on the part of Defendant. Indeed, Plaintiff does not dispute that she signed the Agreement and has not set forth any allegations or evidence of fraud. Therefore, the Agreement and Arbitration provision should be deemed valid.

  **B.**   **Plaintiff's Claims Fall Within Scope of the Arbitration Provision**

There can be no question that all of Plaintiff's claims fall within the scope of the Arbitration provision. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). "Further, Courts in [the Second] Circuit have held that 'doubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability.'" *Savarese v. J.P. Morgan Chase*, No. 16-Civ. 321 (JFB) (SIL), 2016 U.S. Dist. LEXIS 159765, *16 (E.D.N.Y. Nov. 16, 2016) (quoting *Hartford Acc. & Indem. Co.*, 246 F.3d at 226)).

Moreover, broad arbitration provisions, such as the one at issue here, have been enforced in the Second Circuit. *See e.g.*, *Thomas v. Pub. Stor., Inc.*, 957 F. Supp. 2d 496, 500 (S.D.N.Y. 2013) (citing *Genesco*, 815 F.2d at 845) (upholding arbitration clauses that generally referred to "all claims and disputes of whatever nature arising under the contract" and "any controversy arising out of or relating to his contract")); *see e.g.*, *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 77, 79(2d Cir. 1998) (reversing the district and enforcing an arbitration clause that "makes

9

arbitrable any dispute, controversy or claim arising under or in connection with Oldroyd's employment agreement") (internal quotations omitted).[5]

Like the arbitration provisions previously enforced by courts in the Second Circuit, the Arbitration provision covers "any controversy or claim arising out of Employee's employment with BOLLORE LOGISTICS or the termination thereof." Ex. 1 to Roussie Decl. at p. 3, § 9; Roussie Decl., ¶ 5. Plaintiff's factual allegations demonstrate that her claims arise out of her employment with Defendant. *See* Am. Compl., ¶¶ 6-29, entitled "General Allegations." Indeed, Plaintiff alleges that she was subjected to improper sexual acts by her manager while working within Defendant's Miami facility. *See* Am. Compl., ¶ 22. But even if there were any ambiguity as to whether these claims fell within the scope of the Arbitration provision (and there is none), courts in the Second Circuit have held that "doubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability." *Savarese v. J.P. Morgan Chase*, 2016 U.S. Dist. LEXIS 159765 at *16 (internal citations omitted); *see also Oldroyd*, 134 F.3d at 76 ("[W]e have held that the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute") (internal citations and quotations omitted). Here, there is no susceptible interpretation demonstrating that the broad arbitration provision above was not intended to cover the allegations

---

[5] The Eleventh Circuit itself and courts in this circuit have enforced broad arbitration clauses like the Arbitration provision at issue in the instant case. *See e.g., Lambert v. Austin Ind.*, 544 F.3d 1192, 1197-98 (11th Cir. 2008) (finding that an agreement to arbitrate "all workplace disputes . . . arising from or related to employment . . . express[ed] a broad, all-inclusive desire to arbitrate disputes"); *see e.g., Garcia v. Kendall Lakes Auto., LLC*, Case No. 18-24397-CIV-O'SULLIVAN, 2019 U.S. Dist. LEXIS 50317, *18 (S.D. Fla. 2019) ("The undersigned finds that the arbitration provision in the RBO is a broad arbitration clause, and covers the issues raised by the plaintiff in the Complaint, because the RBO arbitration provision provides for arbitration for claims `arising out of or relating to´ the RBO `or the parties relationship....'").

in the Amended Complaint, all of which are inextricably connected to Plaintiff's employment with Bollore. Consequently, this Court should compel Plaintiff to arbitrate her claims before the AAA as required in the Arbitration provision.

### C. Plaintiff's Title VII Claims Are Arbitrable

Under Second Circuit precedent, if federal statutory claims are asserted, the court must consider whether those claims are arbitrable. *JLM Indus.*, 387 F.3d at 169 (2d Cir. 2004). Plaintiff's Title VII claims are her sole federal claims. And courts within the Second Circuit have uniformly held that Title VII claims are indeed arbitrable. *See Daskalakis v. Forever 21, Inc.*, No. 15CV1768, 2016 U.S. Dist. LEXIS 114157, at *6-7 (E.D.N.Y. Aug. 25, 2016) ("Where a valid arbitration agreement exists, the FAA requires that federal statutory claims arising from an employment relationship, including Title VII claims, be subject to mandatory arbitration."); *Wenchun Zheng v. GE*, No. 115CV01232, 2016 U.S. Dist. LEXIS 75123, at *8 (N.D.N.Y. June 9, 2016), *appeal dismissed* (Aug. 9, 2016) (finding ADEA and Title VII claims arbitrable); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 339, n. 7 (S.D.N.Y. 2014) ("Although the Parties do not appear to dispute this issue, the Court notes that claims brought under Title VII [and] the ADA . . . are arbitrable."). Therefore, Plaintiff's Title VII claims (as well as her state law claims) should be subject to arbitration.

### III. The FAA Preempts New York Law That Prohibits the Arbitration of Discrimination And Sexual Harassment Claims.

The New York Civil Practice Law and Rules (the "CPLR") § 7515 prohibits mandatory arbitration of any allegation or claim of discrimination, including sexual harassment. However, CPLR § 7515 only applies to the extent it is not inconsistent with federal law. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The CPLR, by

contrast, purports to preclude or render null and void otherwise valid agreements to arbitrate discrimination claims. CPLR § 7515(a)(2). By purporting to invalidate agreements for reasons outside those permitted by the FAA, CPLR § 7515 is "inconsistent with federal law" and, on its face, does not apply to the Arbitration provision at issue here. *Rollag v. Cowen Inc.*, No. 20-CV-5138 (RA), 2021 U.S. Dist. LEXIS 39942, at *15 (S.D.N.Y. Mar. 3, 2021) (explaining that the "law's outright prohibition on the arbitration of discrimination claims is plainly inconsistent with the FAA and the Supreme Court's interpretation of that federal law"); *id* (holding that the CPLR was "displaced by the FAA").

In addition to being inconsistent with the FAA, to the extent that CPLR § 7515 applies to the Arbitration provision, the FAA preempts it. Congress, in passing the FAA, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: [t]he conflicting rule is displaced by the FAA." *Concepcion*, 563 U.S. at 341. That is exactly what CPLR § 7515 purports to do – prohibit outright the arbitration of a particular type of claim, discrimination claims – and it is therefore preempted by the FAA. *See also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (New York rule that required courts to evaluate the parties' agreement to arbitrate with a heightened "express, unequivocal agreement" standard was preempted by the FAA) (quotations omitted)). Therefore, to the extent CPLR § 7515 applies, it is preempted by the FAA.

Further, the United States District Courts in New York have routinely held that employment discrimination claims as well as claims of sexual harassment and assault are subject to arbitration under the FAA. *See Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 397-398 (S.D.N.Y.

2021) ("New York State cannot exempt Plaintiffs' federal employment discrimination and state law claims from mandatory arbitration under the FAA"); *id*. at 383-384, 418-419 (compelling plaintiff to arbitration her claims of sexual harassment, which included rape allegations); *see White v. WeWork Cos., Inc.*, No. 20-cv-1800 (CM), 2020 U.S. Dist. LEXIS 102354, at *13-14 (S.D.N.Y. June 11, 2020) (compelling the plaintiff to arbitrate her claims of sexual harassment, discrimination, and retaliation); *Latif v. Morgan Stanley & Co. LLC*, 18cv11528 (DLC), 2019 U.S. Dist. LEXIS 107020, (S.D.N.Y. June 26, 2019), *2-3, 10-11 (holding that Section 7515 was preempted by the FAA and compelling the plaintiff to arbitrate her employment discrimination claims as well as her claims of assault, battery, and sexual abuse). In light of the above, this Court should stay proceedings and compel arbitration.

## IV. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 Does Not Apply to Plaintiff's Claims.

The Court should reject any argument that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "FAA Amendment") prohibits the pre-dispute arbitration of Plaintiff's sexual battery and harassment claims because the Plaintiff's claims accrued before the FAA Amendment was enacted. The recent FAA Amendment provides, in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
> *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021*, Pub. L. No. 117-90, 136 Stat. 26.

The Amendment further provides that "this Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that *arises or accrues on or after the date of enactment of this Act*." *Id.* (emphasis added). The FAA Amendment was signed by President

Biden on March 3, 2022, which is the operative "date of enactment." Consequently, the plain language of the FAA Amendment indicates that it does not apply unless the factual allegations supporting claims of sexual harassment and assault took place *after* March 3, 2022. *See Lopez v. Biotronik, Inc.*, Case No. 3:21-cv-1868-JR, 2022 U.S. Dist. LEXIS 237628, *9 (D. Or. Dec. 20, 2022) ("the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act demonstrates a public policy that favors enforcing arbitration agreements pursuant to the FAA, even for claims of sexual harassment, arising before March 3, 2022"); *Zinsky v. Russin*, Case No.: CIVIL ACTION NO. 05-04937, 2022 U.S. Dist. LEXIS 130115, *11 (W.D. Penn. July 22, 2022) ("Here, the EFASASH contains no language indicating that it should have a retroactive effect and in fact, it only refers to any dispute or claim that arises or accrues on or after the date of enactment. Such plain language indicates no Congressional intent to apply the EFASASH Act retroactively") (citations and internal quotations omitted).

In the instant case, April 23, 2021, the date of Plaintiff's resignation (*see* Am. Compl. ¶ 29) was the last date any of Plaintiff's claims could have accrued. *See Quiles v. City of NY*, No. 01 Civ. 10934 (LTS) (THK), 2003 US Dist LEXIS 14238, at *21 (S.D.N.Y. Aug. 13, 2003) (explaining that under New York law an assault or battery claim accrues on the date of the assault or battery); *Zimmerman v. Poly Prep Country Day Sch.*, 888 F Supp 2d 317, 337 (E.D.N.Y. 2012) (citing *Brooklyn Union Gas Co. v. Hunter Turbo Corp.*, 241 A.D.2d 505, 660 (2d Dep't 1997) ("It is well established that in any action to recover damages for negligence . . . , the plaintiff's claim accrues upon the date of injury. That rule applies even if the plaintiff is unaware that he or she has a cause of action" at the time of injury.") (internal quotations omitted))); *Flaherty v. Metromail Corp.*, 235 F3d 133, 137 (2d Cir. 2000) (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (employment discrimination claims accrue on the date that the employee "knows or has

reason to know of the injury which is the basis of his action")). Because Plaintiff's claims indisputably arose and accrued *prior* to the enactment of the FAA Amendment on March 3, 2022, the FAA Amendment does not apply to Plaintiff's claims and should not preclude Defendant from compelling arbitration.

## CONCLUSION

For the reasons set forth above, the Arbitration provision is valid, and Plaintiff's claims fall within the scope of the Agreement; therefore, Plaintiff should be compelled to arbitrate her claims.

WHEREFORE, Defendant, BOLLORE LOGISTICS USA, INC., respectfully requests that this Court enter an order: (1) staying the above-captioned action; (2) compelling Plaintiff to arbitrate her claims pursuant to the terms of the Agreement and the Arbitration provision; and (3) grant such further relief as the Court deems just and proper.

Dated: April 4, 2023.

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600

By: s/Brandon U. Campbell
Pedro J. Torres-Díaz, Esq.
Florida Bar No. 19327
Email: *pedro.torres@jacksonlewis.com*
Brandon U. Campbell, Esq.
Florida Bar No. 112853
Email: *brandon.campbell@jacksonlewis.com*

*Counsel for Defendant*, Bollore Logistics USA, Inc.

CASE NO. 1:23-cv-21208-RKA/LMR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notice of Electronic Filing generated by CM/ECF and Electronic Mail.

 *s/ Brandon U. Campbell*
Brandon U. Campbell, Esq.

## SERVICE LIST

*Jane Doe v. Bollore Logistics USA, Inc. and Adonis Fernandez*
**Case No.: 1:23-cv-21208-RKA/LMR**

H. Clay Roberts, Esq.
Florida Bar No. 262307
Email:  *roberts@robertspa.com*
Javier A. Basnuevo, Esq.
Florida Bar No. 100509
Email:  *basnuevo@robertspa.com*
ROBERTS & BASNUEVO, P.A.
113 Almeria Avenue
Coral Gables, Florida 33134
Telephone: (305) 442-17007

*Counsel for Plaintiff*

Pedro J. Torres-Díaz, Esq.
Florida Bar No. 19327
Email: *Pedro.torres@jacksonlewis.com*
Brandon U. Campbell, Esq.
Florida Bar No. 112853
Email: *brandon.campbell@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600

*Counsel for Defendant, Bollore Logistics USA, Inc.*